113 F.3d 1243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Diane Seidel GOODWIN, Defendant-Appellant.
 No. 96-50392.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 9, 1997.
Decided May 7, 1997.
 
 1
 Before: O'SCANNLAIN and TASHIMA, Circuit Judges, and WHALEY, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Diane Seidel Goodwin ("Seidel") appeals her convictions for conspiracy to make, making, and aiding and abetting in making false statements to federally insured financial institutions, claiming insufficiency of the evidence. Appellant also challenges the loss calculation upon which her adjusted offense level was based and the District Court's refusal to reduce her offense level for minimal or minor participation. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm.
 
 I.
 
 4
 Appellant has not demonstrated that the evidence was insufficient to support any of her twelve convictions for conspiracy to make false statements, making, and aiding and abetting in making false statements to federally insured financial institutions. Although Appellant concedes that there was sufficient evidence for the jury to find that the charged statements were false and were provided to a federally insured financial institution with the intent to influence a loan, she claims that insufficient evidence supports a finding of a fraudulent intent. Seidel correctly points out that direct evidence as to her state of mind was not presented as to the counts of conviction. Her argument, however, ignores the well-established rule that fraudulent intent may be established by circumstantial evidence and the inferences drawn from all the evidence. United States v. Cloud, 872 F.2d 846, 852 n. 6 (9th Cir.) (citation omitted). Likewise, the agreement necessary to the conspiracy conviction need not be explicit and may, instead, be inferred from the defendant's acts pursuant to a fraudulent scheme or from other circumstantial evidence. Id. at 852 (citations omitted). An inference of the existence of a conspiratorial agreement may also be drawn "if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." Id. (citations omitted).
 
 
 5
 Taking the evidence in the light most favorable to the Government, sufficient evidence existed from which the jury could conclude that Seidel was criminally culpable. Seidel was involved in the daily operation of several successor businesses, which she jointly owned with her husband. Over the course of more than two years, Seidel's personal assets were used as collateral to secure six loans at three different lending institutions, many of which were in her name alone. Her signature appears on myriad loan applications, supporting documents, and loan agreements. She spoke with loan officers at several institutions, providing documentation to at least one of them as requested through her yacht agent. Documents containing false information were created on the computer used exclusively by her and a fake promissory note stamped "paid" appeared to have been written on by her, suggesting that she may actually have prepared the false document. Given the evidence regarding the length of time involved, and Seidel's repeated involvement in document production and signing, presence at meetings, and responses to questioning from bank officials, a rational jury could find Appellant guilty of the twelve counts for which she was convicted.
 
 
 6
 This result is not changed by United States v. White, 879 F.2d 1509 (7th Cir.1989), or United States v. McCormick, 72 F.3d 1404 (9th Cir.1995). Both cases reversed the convictions of wives, whose involvement in bankruptcy fraud schemes developed by their husbands was limited to mere signatures on their bankruptcy petitions. In the instant case, the prosecution's case rested on much more than a single signature.
 
 II.
 
 7
 Pursuant to a bankruptcy-related settlement, Appellant's fully secured $465,000 debt to one of the victim banks was transformed into a $200,000 secured debt, which has since been paid, and a $265,000 unsecured debt, which remains partially unpaid. Appellant argues that the actual loss[1] used to calculate her offense level, pursuant to U.S.S.G. § 2F1.1(b)(1) (Oct. 1987), should not have included the unpaid portion of the unsecured debt.
 
 
 8
 As it existed in 1987, U.S.S.G. § 2F1.1 provided for incremental increases in base offense level for all "estimated, probable or intended loss exceed[ing] $2,000."[2] U.S.S.G. § 2F1.1(b)(1). Effective November 1, 1991, Application Note 7(b) was added.[3] Both pre- and post-1991, Ninth Circuit case law uses a net value approach in calculating actual loss. See, e.g., United States v. Allen, 88 F.3d 765, 770 (9th Cir.1996) (affirming reduction of amount of actual loss by the proceeds realized from repossession and resale of mobile homes used as collateral to obtain loans); United States v. Hughes, 775 F.Supp. 348, 350 (E.D.Cal.1991) (cited with approval in Allen, 88 F.3d at 771) (applying pre-1991 guidelines and concluding that there was no actual loss incurred due to defendant's falsification of four loan applications, where two of the houses bought with loan funds had been sold at a profit and the loans paid off in full, and the other two loans were still in good standing, secured by houses for which the property values significantly exceeded the remaining loan balance). Whether assets other than those used to secure the loan may be used to reduce the amount of actual loss has not been addressed by this circuit to date. The opinion in Allen, however, suggests that non-collateral assets could be used to reduce the amount of actual loss if the value of the non-collateral assets was reasonably capable of being ascertained. The court affirmed the district court's decision not to include payments made on thirteen outstanding loans. The court stated:
 
 
 9
 For these loans, there is a risk of default that may offset the amount of income collected now and in the future. If this risk cannot be accurately estimated and included in the loss calculation, then the income should not be considered. The district court found that the future losses and profits were too speculative to consider. This finding is not clearly erroneous. Thus, the district court correctly refused to consider the loan payments made on the thirteen outstanding loans.
 
 
 10
 Id. at 771 (citations omitted). Applying Allen's rationale to this case, the District Court's decision to reduce the amount of loss by the $265,000 secured portion of the debt and by the already paid portion of the unsecured $200,000 debt was appropriate.
 
 
 11
 Appellant's reliance on United States v. Gallegos, 975 F.2d 710, 712-13 (10th Cir.1992), is misplaced. Gallegos involved reduction in the amount of loss based on the complete settlement of all outstanding claims. In the instant case, by contrast, the settlement was not in full satisfaction of all of Appellant's financial obligations. Application of Gallegos to the facts of this case would ignore the reality that the settlement transformed Appellant's fully secured $465,000 debt into one that was partially secured and partially unsecured, but did not fully discharge all of her obligations.
 
 III.
 
 12
 Given the evidence discussed above in section I, it was not clear error for the District Court to refuse to reduce Appellant's offense level for minimal or minor participation, in accordance with U.S.S.G. § 3B1.2 (Oct. 1987). United States v. Felix, 87 F.3d 1057, 1061 (9th Cir.1996); United States v. Sanchez-Lopez, 879 F.2d 541, 557 (9th Cir.1989).
 
 
 13
 AFFIRM.
 
 
 
 *
 Honorable Robert H. Whaley, United States District Judge for the Eastern district of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This issue was sufficiently preserved by Appellant when she joined in the objections raised by her Codefendant
 
 
 [2]
 The 1987 version of § 2F1.1 required courts to use the "estimated, probable or intended loss" in determining the adjusted offense level. Although this was the subject of some dispute at sentencing, Seidel ultimately succeeded in convincing the District Court to use the estimated, actual loss as the basis for the sentence, and neither party challenges the use of this method on appeal
 
 
 [3]
 It states:
 In fraudulent loan application cases and contract procurement cases where the defendant's capabilities are fraudulently represented, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered, or can expect to recover, from any assets pledged to secure the loan.
 U.S.S.G.App. C, amendment 393.