87 F.3d 1057
 96 Cal. Daily Op. Serv. 4762, 96 Daily Journal
D.A.R. 10,247,
96 Daily Journal D.A.R. 7663
UNITED STATES of America, Plaintiff-Appellee,
v.
Santos Alvarez FELIX, Adolfo Leon Gomez, aka; Adolfo
Gomez-Chavez, Defendants-Appellants.
 Nos. 95-50250, 95-50258.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 8, 1996.
Decided June 27, 1996.
 
 1
 Edward B. Moreton, Jr., Assistant United States Attorney General, Los Angeles, California, for plaintiff-appellee.
 
 
 2
 Verna J. Wefald, Pasadena, California, for defendant-appellant Santos Alvarez Felix.
 
 
 3
 James M. Hodges, Long Beach, California, for defendant-appellant Adolpho Leon Gomez.
 
 
 4
 Appeals from the United States District Court for the District of Central District of California. James M. Ideman, District Judge, Presiding. D.C. No. CR-92-1029-JMI.
 
 
 5
 Before: SCHROEDER and LEAVY, Circuit Judges, and TRIMBLE*, District Judge
 
 TRIMBLE, District Judge:
 
 6
 This is an appeal after resentencing. The principal issue is whether the base offense level should have been calculated with reference to the amount of drugs actually processed and delivered, rather than the amount the parties negotiated. We must decide whether an amendment to the Commentary to U.S.S.G. § 2D1.1 should apply retroactively.
 
 FACTS AND PROCEDURAL HISTORY
 
 7
 Santos Alvarez Felix, Adolpho Leon Gomez and several co-conspirators were arrested after trying to sell cocaine to FBI undercover officers. The facts precipitating the arrests are straightforward. Felix, who was primarily the drug courier, delivered a diaper box containing five, separately wrapped packages of cocaine to the house where the sale was to occur. Each package was supposed to contain a kilo of cocaine, although in fact each package contained slightly less. The conspirators would have sold the cocaine immediately, but the FBI insisted on taking one gram samples from each bag first. After the FBI left with the samples, Felix drove off to put the cocaine in storage until the next meeting with the FBI. At that point, the FBI arrested all of the conspirators and seized the cocaine.
 
 
 8
 Felix and Gomez were both convicted under an indictment charging two counts: count one for conspiracy to distribute "approximately five kilos" of cocaine; and count two for possession with intent to distribute "approximately 4,643 grams" of cocaine. The parties do not dispute that the actual amount of cocaine seized was less than five kilos.
 
 
 9
 Each defendant was originally sentenced on June 21, 1993. Felix was sentenced to 120 months (base offense level 32, less two levels for minor role; criminal history category II; range 108-135 months). Gomez was sentenced to 121 months (base offense level 32, with no reductions; criminal history category I; range 121-151 months). This court vacated both sentences and remanded for resentencing. United States v. Felix, Mem. Disp. No. 93-50471, 1994 WL 669226 (Nov. 30, 1994) (ten year mandatory minimum violated ex post facto clause); United States v. Gomez, Mem. Disp. No. 93-50472, 1994 WL 669226 (Nov. 30, 1994) (on remand district court must determine whether Gomez should receive reduction for acceptance of responsibility or for minor participation, and to clarify the amount of drugs to compute correctly the offense level in light of United States v. Petty, 982 F.2d 1374, 1376-77 (9th Cir.1993)).
 
 
 10
 Felix was resentenced on May 23, 1995 to 108 months (base offense level 32, less two levels for minor role; criminal history category II; range 108 to 135 months). Gomez was resentenced on May 22, 1995 to 97 months (base offense level 32, less two levels for minor role; no reduction for acceptance of responsibility; criminal history category I, range 97 to 121 months).
 
 ANALYSIS
 
 11
 Felix and Gomez' first argument on appeal is that on the conspiracy charge, the District Court erred by predicating their base offense level on five kilograms of cocaine, the amount that all of the conspirators agreed to provide. Felix and Gomez argue that the district court should have calculated their base offense level from the lesser amount of cocaine that was actually delivered, thereby lowering their base offense level by two points. See U.S.S.G. § 2D1.1(c)(4),(5). We review the District Court's construction, interpretation, and application of the Sentencing Guidelines de novo. United States v. Basinger, 60 F.3d 1400 (9th Cir.1995).
 
 
 12
 Under the Sentencing Guidelines, the amount of drugs actually delivered can be used to calculate a defendant's base offense level for conspiracy to sell narcotics, provided that the sale is completed and the amount of drugs delivered more accurately reflects the scale of the offense than the amount the defendant promised to supply. The propriety of setting a defendant's base offense level on the weight of drugs actually delivered in a completed transaction is explained in Application Note 12 to the Commentary to § 2D1.1 of the Guidelines (effective November 1, 1995):
 
 
 13
 In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of controlled substance shall be used to determine the offense level unless the sale is completed and the actual amount delivered more accurately reflects the scale of the offense. For example, a defendant agrees to sell 500 grams of cocaine, the transaction is completed by the delivery of the controlled substance--actually 480 grams of cocaine, and no further delivery is scheduled. In this example, the amount delivered more accurately reflects the scale of the offense.
 
 
 14
 The first question, therefore, is whether the sale in this case was completed within the meaning of the Guidelines and whether the actual amount delivered more accurately reflects the scale of the offense than the amount that the conspirators agreed to deliver. Because the precise cocaine under negotiation was present and because all of the conspirators were ready to sell the cocaine but for the FBI's delaying tactics, we hold that the sale was complete within the meaning of the Guidelines. Furthermore, as the amount of cocaine actually present and under negotiation is determinable by the court and as no further delivery was contemplated by the coconspirators or by the FBI, the amount of cocaine actually seized (4,643 grams) more accurately reflects the scale of the offense than the promised five kilograms.
 
 
 15
 Under the Guidelines as they now stand, the district court erred by not sentencing Felix and Gomez for the weight of cocaine actually delivered. But, the current version of Application Note 12 was not yet in force when Felix and Gomez were last sentenced. The question, therefore, is whether the current version of Application Note 12 applies retroactively to Felix and Gomez.
 
 
 16
 Amendments to Guidelines that occur between sentencing and appeal that clarify the Guidelines, rather than substantively change them, are given retroactive application. United States v. Sanders, 67 F.3d 855, 856 (9th Cir.1995). The prior version of Application Note 12 was silent as to the amount of cocaine to be considered in a completed transaction. The prior version addressed only uncompleted transactions, providing that in an uncompleted transaction, the amount under negotiation would govern the defendant's sentence unless the court found that the defendant "did not intend to produce and was not capable of producing" the promised amount of drugs, in which case the defendant could be sentenced for a lesser weight.
 
 
 17
 In short, until Application Note 12 was amended, the appropriate weight of drugs to consider in a completed transaction was ambiguous; a court might sentence on the amount under negotiation or the amount delivered. Although this court twice addressed the proper interpretation of old version of Application Note 12, we never squarely answered the question of the appropriate weight to consider when sentencing a defendant for a completed transaction. See United States v. Barnes, 993 F.2d 680 (9th Cir.1993) (holding that in an uncompleted sale, defendant bears the burden of proving his inability to produce the negotiated quantity of drugs); United States v. Petty, 982 F.2d 1374 (9th Cir.1993) (holding that in five-year, multi-person conspiracy, each conspirator should be sentenced for the amount of drugs distributed that fell within the scope of that conspirator's particular agreement). We therefore hold that by specifying the weight to consider in a completed transaction, the current version of Application Note 12 clarifies the Guidelines, and should be given retroactive effect.
 
 
 18
 This conclusion is fully consistent with the Sentencing Commission's own statement, in the 1995 Guidelines Manual Appendix C, that Application Note 12 was revised because there were many disputes over the proper interpretation of the prior version:
 
 
 19
 [T]his Amendment revises the Commentary to § 2D1.1 to provide that in a case involving negotiation for a quantity of controlled substance the negotiated quantity is used to determine the offense level unless the completed transaction establishes a different quantity.... Disputes over the interpretation of this Application Note has produced much litigation.
 
 
 20
 See also United States v. Johns, 5 F.3d 1267, 1269 (9th Cir.1993) (when determining whether an amendment clarifies or changes a Guidelines, the court may give some weight to the Commission's own declaration). Applying the amendment in this case reduces the base offense level of both defendants from 32 to 30.
 
 
 21
 Both defendants also assert that they should have received a two point reduction for acceptance of responsibility. Whether a defendant is entitled to an acceptance of responsibility reduction is a factual determination, subjected to a clearly erroneous standard of review. United States v. Kimple, 27 F.3d 1409, 1412 (9th Cir.1994). When determining the defendants' entitlement, the district court can consider "the timeliness of the defendant's conduct in manifesting acceptance or responsibility." U.S.S.G. § 3E1.1, comment n. 1(h); see also United States v. Narramore, 36 F.3d 845, 846 (9th Cir.1994)(acceptance untimely under U.S.S.G. § 3E1.1(b) when the government has begun to seriously prepare for trial).
 
 
 22
 Here, Felix testified at trial and argued through counsel that he was not guilty. In Felix's first presentence interview, he continued to deny everything. Prior to resentencing, Felix acknowledged that there were drugs in his car, but denied knowing the quantity.
 
 
 23
 Likewise, any indication by Gomez that he accepted responsibility was post-trial. Gomez did not allege that he went to trial for any purpose other than to establish guilt or innocence. Even in his first presentence interview, Gomez continued to claim that he had nothing to do with the drug deal. In a re-interview concerning sentencing, Gomez asserted that he "was present only because he drove there" and that "he was waiting in the living room" while the drug deal was discussed.
 
 
 24
 The district court allowed defense counsel the opportunity to argue in favor of a two point reduction. Thus, the district court did not err in applying the wrong standard. The district court made a clear factual determination that it would not grant a reduction of two points. We affirm that finding as to both defendants.
 
 
 25
 The district court granted both defendants a two-level reduction as minor participants, but refused to award them a four-level reduction as minimal participants. Felix contends that he is entitled to the greater reduction. Whether a defendant is a minor or minimal participant is a factual determination reviewed for clear error. United States v. Sanchez-Lopez, 879 F.2d 541, 557 (9th Cir.1989).
 
 
 26
 The evidence shows that after Felix delivered the cocaine, and before he left with the cocaine (minus the samples that had been removed), he was present when the cocaine was removed from the diaper box, when the samples were taken and when the sale was discussed. This removed the defendant from the role of a mere courier. We affirm the district court's determination that Felix was a minor rather than a minimal participant. Accordingly, the decision appealed from is
 
 
 27
 AFFIRMED IN PART and REVERSED IN PART. The case is REMANDED for resentencing.
 
 
 
 *
 The Honorable James T. Trimble, Jr., United States District Judge for the Western District of Louisiana, sitting by designation