

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-2-1998

# United States v. Marmolejos

Precedential or Non-Precedential:

Docket 96-1735

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Marmolejos" (1998). *1998 Decisions.* Paper 67.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/67

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 2, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1735

UNITED STATES OF AMERICA

v.

FREDDIE MARMOLEJOS,
        Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal No. 90-442-2)

Argued: January 30, 1998

Before: SCIRICA, ROTH, AND RENDELL, Circuit Judges

(Opinion Filed: April 2, 1998)

        Stephen Robert LaCheen
        Anne M. Dixon (ARGUED)
        Lewis Tower Building, 31st Floor
        225 South 15th Street
        Philadelphia, PA 19102
         Attorneys for Appellant

        Walter S. Batty, Jr.
        Amy L. Kurland (ARGUED)
        Office of the United States Attorney
        615 Chestnut Street, Suite 1250
        Philadelphia, PA 19106
         Attorneys for Appellee

OPINION OF THE COURT

RENDELL, Circuit Judge:

This appeal raises the issue of whether the defendant, Freddie Marmolejos, is entitled to relief under 28 U.S.C. S 2255 and resentencing by the district court, in light of a post-sentencing amendment to the application notes to S 2D1.1 of the United States Sentencing Guidelines. Because we hold that the amendment clarified the existing application note, rather than effecting a substantive change in the law, Marmolejos is entitled to relief and resentencing. Accordingly, we will reverse the district court and remand for resentencing with consideration given to the amendment to the application note.

I.

In June 1991 Marmolejos was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. S 846. The jury found him not guilty of possession with intent to distribute cocaine under 21 U.S.C. S 841. The evidence showed that he had negotiated a purchase of 5.00 kg of cocaine but had delivered only 4.96 kg at the time of the sale. Using this 5.00 kg figure, the district court sentenced Marmolejos in October 1991 to 126 months in prison, based upon the version of Application Note 12 to U.S.S.G. S 2D1.1 that was in effect at that time. After we affirmed the conviction in August 1992, Marmolejos challenged his sentence by filing a petition in March 1995 for habeas relief under 28 U.S.C. S 2255. However, the district court denied the motion and we affirmed.

In April 1996 Marmolejos then filed a second S 2255 habeas motion for relief from the district court's judgment.[1] He contended that his sentencing offense level should have

_____

1. Marmolejos was not subject to the new restrictions on successive habeas petitions contained in the Antiterrorism and Effective Death Penalty Act of 1996, because his second habeas petition was filed five days prior to the April 24, 1996, date on which the Act took effect.

been based solely on the 4.96 kg of cocaine he actually distributed, rather than on the 5.00 kg of cocaine he intended to distribute as a member of the conspiracy. The difference was weighty, for Marmolejos's sentence could have been reduced by five to twenty-nine months if he was correct.2 In support of his claim, Marmolejos argued that Amendment 518 to the Guidelines, which changed Application Note 12 effective November 1, 1995, should apply to his offense, and that he should be resentenced so that the amendment could be applied in sentencing him. The district court, though, rejected Marmolejos's contention and denied both his habeas motion and his motion for reconsideration, holding that the amendment was not to be given retroactive effect. Marmolejos then filed an appeal, which we agreed to consider. We have jurisdiction over the appeal pursuant to 28 U.S.C. S 2253(a), and we exercise plenary review of the district court's ruling. See United States v. Higgins, 128 F.3d 138, 139 (3d Cir. 1997); United States v. Roman, 121 F.3d 136, 140 (3d Cir. 1997), cert. denied, 118 S. Ct. 722 (1998).

II.

A.

Section 2D1.1 of the Sentencing Guidelines establishes the base offense level for defendants who act as parties to an agreement or conspiracy to sell narcotics, based upon the quantity of drugs involved. Application Note 12 to S 2D1.1 addresses the method of determining the appropriate quantity if the offense involves negotiation to traffic in narcotics.3 Prior to November 1995, Application Note 12 provided as follows:

_____

2. The 4.96 kg figure which Marmolejos posited yields a base offense level of thirty, whereas the 5.00 kg figure on which he was sentenced yields a level of thirty-two. The guideline range for a base offense level thirty with a criminal history category of one is 97-121 months. U.S. Sentencing Guidelines Manual S 5A (1998). Thus, because Marmolejos was sentenced to 126 months in prison, his sentence could have been reduced by anywhere from five to twenty-nine months.

3. The parties have not challenged, nor do we address, the district court's reliance on this application note in determining the appropriate

3

> In an offense involving negotiation to traffic in a
> controlled substance, the weight under negotiation in
> an uncompleted distribution shall be used to calculate
> the applicable amount. However, where the courtfinds
> that the defendant did not intend to produce and was
> not reasonably capable of producing the negotiated
> amount, the court shall exclude from the guideline
> calculation the amount that it finds the defendant did
> not intend to produce and was not reasonably capable
> of producing.

U.S. Sentencing Guidelines Manual app. C at 858 (1998).

Attempting to follow this application note in sentencing
Marmolejos, the district court used "the weight under
negotiation" -- namely, 5.00 kg -- as the relevant quantity.
However, four years after Marmolejos was sentenced,
Amendment 518 to the Guidelines deleted the language of
Application Note 12 and inserted a new set of instructions
in its place. As amended, the application note now reads:

> In an offense involving an agreement to sell a
> controlled substance, the agreed-upon quantity of the
> controlled substance shall be used to determine the
> offense level unless the sale is completed and the
> amount delivered more accurately reflects the scale of
> the offense. For example, a defendant agrees to sell 500
> grams of cocaine, the transaction is completed by the
> delivery of the controlled substance - actually 480
> grams of cocaine, and no further delivery is scheduled.
> In this example, the amount delivered more accurately
> reflects the scale of the offense. In contrast, in a
> reverse sting, the agreed-upon quantity of the
> controlled substance would more accurately reflect the
> scale of the offense because the amount actually
> delivered is controlled by the government, not by the
> defendant. If, however, the defendant establishes that
> he or she did not intend to provide, or was not

_____

sentence for Marmolejos. It appears that because of the unusual facts
here -- namely, that Marmolejos was convicted of conspiracy but
acquitted of the underlying offense -- negotiation to traffic is the most
apt description of Marmolejos's offense.

4

> reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

Id. (emphasis added).

Marmolejos argues that this new language "clarifies" the prior guideline in that it provides for the test in a completed distribution, which his was, so as to clear up the ambiguity that previously existed due to the Sentencing Commission's failure to provide for completed distributions in the application notes. He maintains further that if we agree that this is a clarifying amendment, we should remand for resentencing so as to give the sentencing court the opportunity to consider the additional clarifying language.

Marmolejos's argument is based on the established principle that a post-sentencing amendment to a sentencing guideline or its comments should be given effect if it "clarifies" the guideline or comment in place at the time of sentencing. If, however, the amendment effects a substantive change in the law, the defendant does not reap the benefit of the new provision. See U.S. Sentencing Guidelines Manual S 1B1.11(b)(2) (1998); Isabel v. United States, 980 F.2d 60, 62 (1st Cir. 1992) (holding that this is the rule in "virtually all circuits"); United States v. Ofchinick, 877 F.2d 251, 257 n.9 (3d Cir. 1989).

The district court did not employ this test, but, rather, held that because Amendment 518 was not listed in S 1B1.10 of the Guidelines -- which specifies the amendments that are to have retroactive effect -- the change had no impact on Marmolejos's sentence. Yet the law is clear that "courts can give retroactive effect to a clarifying (as opposed to substantive) amendment regardless of whether it is listed in U.S.S.G. S 1B1.10." United States v. Capers, 61 F.3d 1100, 1109 (4th Cir. 1995), cert. denied, 116 S. Ct. 1830 (1996). Moreover, as Marmolejos has noted and as the government has conceded, S 1B1.10 is not relevant to our consideration of the instant S 2255 motion, because Marmolejos does not

5

base his motion on a post-sentence amendment lowering the guideline range applicable to his offense. He seeks review only of whether the court used the proper drug quantity in calculating his prison term. Therefore, the sole question before us is whether Amendment 518 has, by its terms, clarified the existing commentary in the Guidelines or substantively changed its meaning. If the former, Marmolejos's petition for habeas relief should be granted and the district court should consider the amendment at a resentencing hearing. If the latter, Marmolejos's motion should be denied and the amendment should be given no effect.

B.

There is no bright-line test for determining whether an amendment to the Guidelines "clarifies" the existing law; "these categories [are] unclear, and as is usually the case, there are factors supporting either side." United States v. Prezioso, 989 F.2d 52, 53 (1st Cir. 1993) (citation omitted). Among other things, the courts look to the language of the amendment, United States v. Nissen, 928 F.2d 690, 694-95 (5th Cir. 1991), the amendment's purpose and effect, Capers, 61 F.3d at 1110, and "whether, as a matter of construction, the guideline and commentary in effect at that time is really consistent with the amended manual." United States v. Bertoli, 40 F.3d 1384, 1405 (3d Cir. 1994).

Under the former version of Application Note 12, the Sentencing Commission had addressed only "the weight under negotiation in an uncompleted transaction" as the basis to calculate the applicable amount for sentencing, unless the defendant "did not intend to produce and was not reasonably capable of producing" this amount. U.S. Sentencing Guidelines Manual app. C at 858 (1998) (emphasis added). The prior text of the application note provided no guidance as to what amount of drugs a court should consider in sentencing a defendant convicted of participating in a completed transaction. Thus, the terms of the previous application note were facially ambiguous; the note spoke only to uncompleted deals.

By contrast, the amended commentary provides that "the agreed-upon quantity of the controlled substance shall be

6

used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense." Id. As a result, Application Note 12 now specifies that the actual weight delivered, rather than the weight under negotiation, should be used for calculating a defendant's sentence if the sale was completed. Marmolejos argues that this change fills a textual void in the language of the commentary and clarifies the Guidelines by resolving the ambiguity created by the preceding version of the application note.

Marmolejos's argument that the removal of the ambiguity renders the amendment a clarification is buttressed by the opinion of the only other circuit to have addressed this issue. In United States v. Felix, 87 F.3d 1057 (9th Cir. 1996), the defendant, like Marmolejos, argued for application of Amendment 518 so that his sentence would be calculated with reference to the amount of drugs actually delivered, rather than by reference to the weight of the drug sale he had negotiated. The Ninth Circuit noted that the "prior version of Application Note 12 was silent as to the amount of cocaine to be considered in a completed transaction," and concluded that "until Application Note 12 was amended, the appropriate weight of drugs to consider in a completed transaction was ambiguous; a court might sentence on the amount under negotiation or the amount delivered." Id. at 1060. Thus, it, too, held that "by specifying the weight to consider in a completed transaction, the current version of Application Note 12 clarifies the Guidelines, and should be given retroactive effect." Id.4

_____

4. Felix also found support for this conclusion in a statement from the Sentencing Commission regarding Amendment 518. The Sentencing Commission had written that Amendment 518 was adopted, in part, because "[d]isputes over the interpretation of this application note have produced much litigation." U.S. Sentencing Guidelines Manual app. C at 860 (1998). Felix concluded that this demonstrated that Amendment 518 was intended to clarify an ambiguity under the prior commentary. 87 F.3d at 1060. However, a review of the eight cases cited in the comment reveals that the "disputes" referred to a circuit split concerning the burden of proof in S 2D1.1, not to disputes as to the calculation of drug quantities as such. Consequently, unlike the Felix court, we do not find the Sentencing Commission's comments helpful in resolving the issue before us.

7

The government advances two arguments in support of its view that the amendment effected a substantive change in the law, rather than a clarification. First, the government claims that Amendment 518 substantively changed the Guidelines because it revised the note in a way that conflicted with the developing caselaw. Most courts construing the prior version of Application Note 12 had held that a court should use the negotiated amount of drugs when calculating the base offense level for a defendant involved in a completed transaction. See, e.g., United States v. Buggs, 904 F.2d 1070, 1078 (7th Cir. 1990); United States v. Alvarez-Cardenas, 902 F.2d 734, 736 (9th Cir. 1990); United States v. Alston, 895 F.2d 1362, 1369-71 (11th Cir. 1990).5 Therefore, the government argues, the amendment necessarily changed the law by requiring the courts to consider the actual amount of narcotics sold, rather than the amount negotiated, when sentencing defendants convicted of participating in completed deals.

Our answer to this, however, is that merely because the courts were resolving an ambiguity in the prior law by supplying a meaning that was neither stated in, nor clear from, the language of the application note, does not mean that the new wording has fashioned a substantive change to the Guidelines. In fact, one could posit that quite the opposite was the case -- that the new language was fashioned to clarify the ambiguity made apparent by the caselaw. In any event, while Amendment 518 may alter the practice of the courts in construing S 2D1.1, and may even reverse the caselaw interpreting Application Note 12, it is the text of the amendment -- not the courts' gloss on that text -- that ultimately determines whether the amendment is a clarification or a substantive revision.6

_____

5. In fact, most of these courts simply assumed that Application Note 12 required using the negotiated quantity in completed transactions, writing that "[u]nder the sentencing guidelines, the amount of the drug being negotiated, even in an uncompleted distribution, shall be used to calculate the total mount [sic] in order to determine the base level." United States v. Perez, 871 F.2d 45, 48 (6th Cir. 1989).

6. It should be noted that the evolving caselaw would be viewed differently if the new language raised ex post facto issues by resulting in an increase in the defendant's sentence. Here, however, we have no ex post facto concerns, because application of Amendment 518 would reduce, rather than increase, Marmolejos's term of imprisonment.

We explored a similar dilemma in United States v. Joshua, 976 F.2d 844 (3d Cir. 1992), where we held that a court could consider a change to a guideline's text despite the fact that it mandated a result different from that reached by a prior panel. The defendant in Joshua argued that the district court should have used an amendment to U.S.S.G. S 4B1.2 clarifying the definition of a "crime of violence" to lower his sentence under the Guideline's career offender provisions. The difficulty was that, "[u]nfortunately, this amendment to the commentary urge[d] us to interpret the guideline in a manner inconsistent with two recent decisions of this court." Id. at 852. Nevertheless, after reviewing the Sentencing Commission's role in the statutory scheme, we concluded that the Commission, like an administrative agency, has the authority to overturn precedent in order to clarify an ambiguity in the law and to promote uniformity in the application of a statute. Id. at 855. Indeed, "[w]here a prior panel of this court has interpreted an ambiguous statute in one way, and the responsible administrative agency later resolves the ambiguity another way, this court is not bound to close its eyes to the new source of enlightenment." Id.[7] Therefore, we do not view the inconsistency between the caselaw and the amendment to Application Note 12 as requiring a conclusion that the amendment works a substantive change.

We are similarly unpersuaded by the government's second contention -- that the commentary to Amendment 518 evinces an intent to create a substantive change in the

_____

7. The Supreme Court has since disagreed in part with the analogy we employed in Joshua, writing that the Sentencing Commission's commentary in the Guidelines is more "akin to an agency's interpretation of its own legislative rules," rather than to an agency's construction of a federal statute that it administers. Stinson v. United States, 508 U.S. 36, 44-45 (1993). Nevertheless, Sentencing Commission commentary still remains "controlling authority," id. at 45, that is to be applied in all but the most limited circumstances. Id. at 38. Therefore, we believe that the basic principle of Joshua remains good law; because of the Sentencing Commission's broad power to interpret the Guidelines, clarifying amendments should be considered by the sentencing court despite any conflict with established precedent, unless ex post facto concerns are present.

law. The Sentencing Commission's explanation of Amendment 518 states that "this amendment revises the Commentary to S 2D1.1 to provide that in a case involving negotiation for a quantity of a controlled substance, the negotiated quantity is used to determine the offense level unless the completed transaction establishes a different quantity." U.S. Sentencing Guidelines Manual app. C at 860 (1998) (emphasis added). The government asserts that the Sentencing Commission used the word "revises" to illustrate that Amendment 518 effected a substantive change. Had the Commission intended merely to clarify the existing guideline, the government argues, it would have used the term "clarifies" rather than the term "revises," as it did in drafting several other amendments.

We disagree. As an initial matter, the manner in which the Commission describes a guideline amendment is not dispositive. As we made clear in Bertoli, "our own independent interpretation of the pre-amendment language is controlling," 40 F.3d at 1407 n.21, and the mere fact that an amendment is referred to as a clarification or a revision is ordinarily of slight import to our analysis.

Additionally, the Commission's use of the term "revises" in this instance reveals little about the intended effect of Amendment 518. The Commission states that Amendment 518 "revises the Commentary to S 2D1.1," to which we respond: of course it does. It "revises" the commentary in the same way that every amendment revises the commentary -- by changing, altering, or modifying the text. The amendment does not say that it `revises the method by which the courts determine the correct quantity of drugs for sentencing purposes under S 2D1.1,' or that it revises the calculation of drug quantities under the Guidelines. Rather, it states simply that it "revises the Commentary" language itself. Therefore, we do not believe that the Commission's use of the term "revises" informs our decision as to whether its intent was to substantively change the law.

The line between a clarification and a revision may be a fine one, but we believe the difference can be discerned in this case. Amendment 518 does not change the method for calculating amounts involved in uncompleted sales, but

10

merely clarifies the proviso for completed ones. Accordingly, we conclude that Amendment 518 to the Sentencing Guidelines represents a clarification of the previous application note, because it fills a void and resolves an ambiguity in S 2D1.1 regarding the proper weight of drugs for a court to consider in sentencing a defendant involved in a completed narcotics transaction.

III.

The district court's Orders dated June 11, 1996, and July 29, 1996, will be REVERSED, the judgment of sentence will be VACATED, and the cause will be REMANDED for resentencing and other proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit