**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Marcos CRUZ–MENDOZA, Defendant–Appellant.**

**No. 97–15918.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1998.

Decided June 23, 1998.

Peter Goldberger, Ardmore, Pennsylvania, for the defendant-appellant.

Reese V. Bostwick, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee.

Before: SCHROEDER, FARRIS and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge.

In 1991, Marcos Cruz–Mendoza (Cruz) was convicted of two drug offenses and sentenced to a 235–month term of imprisonment. That conviction and sentence were affirmed on direct appeal. *United States v. Angulo–Ruiz*, 978 F.2d 716 (table), 1992 WL 320963 (9th Cir.1992). Cruz then moved under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. The district court denied his § 2255 motion and Cruz now appeals. We affirm.

## BACKGROUND

Beginning in September, 1990, Drug Enforcement Agency (DEA) agents conducted a series of meetings with Cruz's codefendants, Basilio Angulo–Ruiz (Angulo), Oscar Barnett–Inclan (Barnett) and Samuel Ortiz Espinosa (Ortiz). On September 26, DEA agents Moore and Thomas bought two kilograms of uniquely wrapped cocaine from Angulo. On October 10, DEA agents Moore and Thomas again met with Angulo and Barnett at Angulo's apartment to finalize an agreement to purchase a total of 110 kilograms of cocaine. Moore was given the option of purchasing the total in 10 kilogram lots or all at once. The agent selected the latter option.

It is undisputed that Cruz was in Angulo's apartment during this meeting and, according to Moore, Cruz was in charge of the transaction. Moore testified that Cruz said that he could get the 110 kilograms of cocaine. Moore also testified that Cruz stated that the two kilograms sold to Moore on September 26 came from the same lot as eight kilograms which Cruz had lost in a police raid. Moore testified that the unique wrappings of the two kilograms that he bought on September 26 matched the wrappings of the eight kilograms seized by police.

The exchange of drugs (110 kilograms of cocaine) for money ($2.5 million) was to take place on the next day, October 11. The transaction, however, did not occur. Angulo told Moore that Cruz's cocaine supplier suspected police surveillance of such a large transaction and refused to deliver.

Cruz was indicted on two counts with Angulo, Ortiz and Barnett. Count One charged

Cruz of conspiring between September 26, 1990, and October 11, 1990, to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A)(ii)(II). Count Two charged Cruz with possession with intent to distribute more than 500 grams but less than five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). Cruz's prosecution was severed from the other defendants.

At trial, Cruz presented two defenses. First, counsel argued that Cruz was an innocent bystander and not a participant in the October 10 transaction. Therefore, if there were a conspiracy, Cruz was not involved. Cruz testified on his own behalf that he was in the apartment on October 10 when the 110 kilogram transaction was agreed upon, but that he had no part in the drug deal. Barnett was called as a defense witness and he testified that Cruz had nothing to do with the transaction. Barnett also stated that neither he nor Angulo meant to deliver the cocaine on October 11 because they had no cocaine to sell at that time. Barnett admitted that he was arrested with 110 kilograms of cocaine on October 16, 1990, and had pled guilty to the same two counts that Cruz contested.

The second defense strategy Cruz's counsel attempted to use was based on a misunderstanding of the indictment and the conspiracy laws. In closing argument, defense counsel argued that the conspiracy charged in Count One never existed, as a matter of law, because the transaction was never intended to occur, or could not occur, by the date the conspiracy ended, October 11, 1990. Counsel argued that Angulo and Barnett's intent on October 10 was to stall the agents until they could find a cocaine source at a later date.[1] Counsel asked the court to charge the jury that there could have been no conspiracy if the jury found that the alleged co-conspirators had no intent or ability to sell cocaine on or before October 11,

1990. The court refused.[2] Cruz was convicted on both counts.

At sentencing, the district court attributed a total of 112 kilograms of cocaine as "relevant," pursuant to U.S.S.G. § 1B1.3. The court concluded that even if the co-conspirators were lying about when and how much cocaine they could deliver, the amount promised was relevant to the sentence. The district court agreed with defense counsel that Cruz's Criminal History Category, category III, overstated the seriousness of Cruz's criminal history; however, it refused to depart downward, pursuant to U.S.S.G. § 4A1.3.[3] Cruz was sentenced to concurrent terms of 235 months imprisonment on each count.

Cruz raised three issues in his § 2255 motion which he continues to pursue on appeal: (1) Ineffective assistance of counsel; (2) Application of a post-sentencing amendment to the Sentencing Guidelines; and (3) Failure to grant a downward departure.

In denying Cruz's § 2255 motion, the district court concluded on the ineffective assistance of counsel claim that Cruz's counsel acted within the broad range of competency and that there was not a reasonable probability that, but for counsel's errors, the outcome would have been different. On the Guidelines amendment issue, the court concluded that a post-sentencing amendment to the Sentencing Guidelines did not apply on collateral review. The district court declined to reconsider the downward departure issue because it has been fully addressed on direct appeal. The district judge certified only the first two issues for appeal. *See* 28 U.S.C. § 2253(c)(3).

## STANDARD OF REVIEW

 A district court's decision to grant or deny a federal prisoner's petition for habe-

---

**1.** Another conspiracy existed which involved the other two codefendants, but not Cruz. Apparently, Cruz was not involved when Angulo and Barnett successfully located another source for the 110 kilograms.

**2.** Cruz unsuccessfully pressed this argument on appeal. *See Angulo-Ruiz,* 1992 WL 320963, at *2.

**3.** Cruz had four prior convictions for drunk driving, but no other record. DUI convictions are not discounted as "minor traffic infractions" according to U.S.S.G. § 4A1.2, appl. n. 5.

as corpus is reviewed de novo. *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997). The court's factual findings are reviewed for clear error. *United States v. Span*, 75 F.3d 1383, 1386 (9th Cir.1996).[4]

## DISCUSSION

### I. Ineffective Assistance of Counsel

■ A claim of ineffective assistance of counsel is a mixed question of law and fact reviewed de novo. *Span*, 75 F.3d 1383, 1387 (9th Cir.1996). It may be raised for the first time on a § 2255 motion. *Id.* To prevail on a claim of ineffective assistance of counsel, Cruz must show that: (1) his attorney's performance was unreasonable under prevailing professional standards; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Id.* A reasonable probability has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Failure to make the required showing on either prong "defeats the ineffectiveness claim." *Strickland,* 466 U.S. at 700, 104 S.Ct. 2052. On the § 2255 motion, the district court concluded that even though counsel did not understand the law of conspiracy, he performed within an acceptable range.

■ Even assuming *arguendo* that defense counsel's performance fell below prevailing professional standards, Cruz is not entitled to have his conviction set aside because he cannot show that he was prejudiced by his counsel's errors. Cruz claims that if his counsel had not misunderstood the conspiracy law, there is a reasonable probability that the jury would have hung or acquitted him. We disagree. Cruz's main defense was that he was not involved in any drug deal and was merely an innocent bystander. The jury, however, found otherwise—that the government's witness, DEA agent Moore, was more credible than Cruz and Barnett.

If counsel had understood the conspiracy law, it is not clear what he could or should have done differently to defend Cruz. Cruz argues it was error for his counsel to ask

Barnett about pleading guilty to conspiring to distribute cocaine and "open the door" for Barnett's testimony that he had pled guilty to Count One. The fact that Barnett pled guilty to Count One undercut Cruz's defense that the charged conspiracy did not exist as a matter of law. However, Cruz's main defense was that he was not involved in Barnett's drug activities, regardless of what those activities might have been. Barnett's testimony on cross-examination that he pled guilty to Count One and was caught with cocaine did not prejudicially influence Cruz's defense that he was merely an innocent bystander in the wrong place at the wrong time.

Defense counsel was also permitted to present his misguided theory of conspiracy law during closing argument. He argued to the jury that the government had not proved conspiracy because the sale never occurred. The confusion created in the minds of the jury undoubtedly assisted, rather than hurt, Cruz's chances of being acquitted. Because there was not a reasonable probability that, but for counsel's errors, the result of the trial would have been different, the district court did not err in concluding that this claim was meritless.

### II. Misapplication of the Sentencing Guidelines

#### A. Amendment 518

■ We review de novo the district court's construction, interpretation and application of the Sentencing Guidelines. *United States v. Basinger,* 60 F.3d 1400 (9th Cir. 1995). Cruz argues that the district court considered the wrong amount of cocaine when setting the base offense level. At sentencing, the district court found a total of 112 kilograms of cocaine "relevant" to the sentence, pursuant to U.S.S.G. § 1B1.3. *See also* U.S.S.G. § 2D1.1(c). The court counted the two kilograms actually sold and the 110 kilograms that the conspiracy members planned to sell. This resulted in a sentencing range of 235 to 293 months. On appeal, we af-

---

4. The standards of review which apply to each of the respective issues raised are set forth below.

firmed, quoting U.S.S.G. § 2D1.4, appl. n. 1 (Nov. 1, 1990), which provided:

> [W]here the court finds that the defendant did not intend to produce *and* was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds that the defendant did not intend to produce *and* was not reasonably capable of producing.

*Angulo–Ruiz*, 1992 WL 320963, at *4 (emphasis added).[5] Effective November 1, 1995, the Sentencing Commission amended this application note to provide:

> If ... the defendant establishes that he or she did not intend to provide, *or* was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of the controlled substance that the defendant establishes that he or she ... did not intend to provide *or* was not reasonably capable of providing.

Guideline Amendment 518, U.S.S.G. § 2D1.1, appl. n. 12 (emphasis added). If Amendment 518 had applied, the court would have been free to conclude that the conspiracy charged in Count One was not reasonably capable of providing 110 kilograms. In that case, Cruz's base offense level would have been calculated at some lesser quantity, perhaps even as low as two kilograms, resulting in a lower sentencing range.

■ Commentary and amendments to the Sentencing Guidelines are binding on the courts. *Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). The Guidelines indicate that only those amendments listed in U.S.S.G. § 1B1.10 may be applied retroactively on a collateral attack under 18 U.S.C. § 3582(c)(2). Amendment 518 is not listed in § 1B1.10. Cruz claims, however, that Amendment 518 is a clarifying amendment. Amendments that clarify, rather than substantively change, the Guidelines

are given retroactive application on direct appeal. *United States v. Sanders*, 67 F.3d 855, 856 (9th Cir.1995).

In *United States v. Felix*, 87 F.3d 1057 (9th Cir.1996), we held that Amendment 518 was a retroactive "clarifying amendment." However, *Felix* is not dispositive here because the part of Amendment 518 at issue in *Felix* related to a completely new clause inserted in the application note regarding completed transactions; it was not a substantive alteration of a preexisting phrase which addressed uncompleted transactions.[6] In *United States v. Barnes*, 993 F.2d 680, 682 (9th Cir.1993), prior to the amendment, we noted that application note 12 was "conjunctive, not disjunctive" and, therefore, under a plain reading of the commentary, the defendant had to show *both* lack of intent *and* lack of capability before the amount the defendant claimed he could not produce would be excluded.

■ An amendment's impact on the Guideline, and not its impact on circuit law, determines if it is a clarifying amendment or a substantive change. *Sanders*, 67 F.3d at 857. *But see United States v. Smallwood*, 35 F.3d 414, 418 (9th Cir.1994). Here, where an amendment substitutes the word "or" for the word "and," we conclude that there has been a substantive change in the commentary rather than a "clarification." Because the part of Amendment 518 at issue here is not merely clarifying, but makes a substantive change, Cruz cannot, on collateral review, attack his sentence on the basis of the new amendment. Therefore, there is no need for us to reach the issue of whether a clarifying amendment is retroactively applicable on collateral review.

**B. Downward Departure and the Certificate of Appealability**

Cruz also seeks to appeal the district court's refusal to grant him a downward de-

---

5. Amendment 447 deleted U.S.S.G. § 2D1.4 and inserted the relevant application note (which was appli. n. 1 under § 2D1.4) under § 2D1.1.

6. The new provision begins "In an offense involving an agreement to sell a controlled substance, the agreed upon quantity of the con-

trolled substance shall be used to determine the offense level *unless the sale is completed and the amount delivered more accurately reflects the scale of the offense ....*" U.S.S.G., Amendment 518 (emphasis added). In *Felix*, the defendant delivered less than the amount agreed upon.

parture, contending that it was based on a misapprehension of the law. The district court did not certify this issue for appeal.

The Antiterrorism and Effective Death Penalty Act of 1996 amended 28 U.S.C. § 2253. As amended, that section now provides, in part:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from... (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). We have construed the words "or judge," in the term "a circuit justice or judge," to include a "district judge," i.e., district judges have the authority to issue a certificate of appealability (COA). *United States v. Asrar,* 116 F.3d 1268, 1270 (9th Cir.1997). The Federal Rules of Appellate Procedure explicitly require the district judge who rendered the judgment in a § 2255 proceeding to either issue a COA or "state the reasons why such a certificate should not issue." Fed. R.App. P. 22(b). Rule 22(b) provides that if the district court has denied the COA, the applicant may request that a circuit judge issue the certificate. *Id.*

Where, as in this case, a district court issues a COA, but certifies only some of the issues, it is not clear under the statute or existing circuit law whether we (the merits panel) may consider issues not previously

certified by either the district court or a Ninth Circuit motions panel. The appellant did not file a motion with this court requesting a COA on the issue the district court declined to certify, but simply briefed that issue along with the issues certified and requested in his opening brief that a COA issue.

■■■ We now hold that, in the interest of efficiency, where a district judge has issued a COA on some but not all of the issues,[7] we will treat the briefing of an uncertified issue as a request for a COA and first decide whether one should issue. *See Williams v. Parke,* 133 F.3d 971, 975 (7th Cir.1998) (issues briefed but not certified will be construed as an implicit request for a COA on such issues); *In re Certificates of Appealability,* 106 F.3d 1306, 1307 (6th Cir.1997) (administrative order) (where only some issues certified by district court, notice of appeal "constitutes a request to have all the issues raised ... reviewed by ... the court of appeals"). The merits panel is in a better position than a motions panel to determine without undue delay whether the appellant has made a "substantial showing of the denial of a constitutional right" on a briefed but uncertified issue. 28 U.S.C. § 2253(c)(2). Thus, it better serves judicial efficiency and economy for the merits panel to decide the COA issue, rather than to stay the appeal on the certified issues while the COA issue is remanded to a motions panel.

■■■ Upon examination of the uncertified issue, we conclude that Cruz has not made the substantial showing required by § 2253(c)(2) that he has been denied of a constitutional right.[8] The issue of the district court's refusal to depart downward was fully addressed on direct appeal.[9] Finding

---

7. We are not faced with the circumstance where a supplemental COA was sought from, and refused by, a motions panel of this court, and do not address that issue.

8. We need not decide the exact contours of the "substantial showing" standard of § 2255(c)(2), see, e.g., *Greenawalt v. Stewart,* 105 F.3d 1268, 1272–73 (9th Cir.), cert. denied, — U.S. —, 117 S.Ct. 794, 136 L.Ed.2d 735 (1997); *Nevius v. Sumner,* 105 F.3d 453, 458 (9th Cir.1996), because Cruz cannot meet even a most generous reading of it.

9. On direct appeal, the issue was cast in a slightly different form. There, Cruz contended that the district court did not exercise its discretion, although the disposition does not tell us what reason, if any, Cruz attributed as the asserted reason for the court's failure to exercise its discretion. *See Angulo–Ruiz,* 1992 WL 320963, at *5. On this motion, Cruz contends that the district court's refusal to depart downward was based on a misapprehension of the law that it could not depart if the departure would create a disparity of sentencing among co-defendants. Not only is this an argument that could have

that the district court's decision not to depart downward was an exercise of its discretion, we concluded in accordance with established law that we had no jurisdiction to review. it. *Angulo–Ruiz,* 1992 WL 320963, at *5. In light of this record, Cruz has not made "a substantial showing of the denial of a constitutional right." Accordingly, we deny the request for a COA on this issue and do not reach the merits of this claim.

## CONCLUSION

Cruz has not shown prejudice on his ineffective assistance of counsel claim, and he cannot prevail on his sentencing claims.

**AFFIRMED.**

been, but was not, made on direct appeal; it also appears to be foreclosed by the finding on direct appeal that the district judge "was aware that he could exercise his discretion to depart downward and made a *considered decision not to.*" *Id.*