IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-50986
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES ROTHENBACH and ERIC TAYLOR,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Western District of Texas
(SA-97-CR-203-2)

_____

October 1, 1999

Before REAVLEY, HIGGINBOTHAM and DENNIS, Circuit Judges.

PER CURIAM:[*]

Appellant Charles Rothenbach appeals his conviction and sentencing for one count of conspiracy to possess with intent to distribute marijuana and one count of possession of a firearm by a felon. Appellant Eric Taylor appeals his sentencing for one count of conspiracy to possess with intent to distribute marijuana. We affirm.

**Did the district court err in failing to suppress the evidence seized pursuant to search warrants issued on June 18 and June 19, 1997?**

The court does not address the issue of probable cause if the case can be

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

decided on the basis of the good faith exception. U.S. v. Satterwhite, 980 F.2d 317, 320 (5th Cir. 1992). Rothenbach argues that the good faith exception does not apply because the warrant was issued on the basis of a "bare bones" affidavit. An affidavit is "bare bones" if it consists of nothing but conclusory statements lacking in facts or circumstances from which a magistrate can independently determine probable cause. Satterwhite, 980 F.2d at 321.

The affidavit of Cal Fowler is not a "bare bones" affidavit because it contains statements of fact from which a magistrate can independently determine probable cause. The affidavit recounts that the informant stated that he accompanied Taylor to Rothenbach's ranch where Taylor purchased a half-pound of marijuana from Rothenbach. The informant stated that Taylor negotiated with the informant regarding a future purchase from Rothenbach of up to 600 pounds of marijuana. These are not conclusory statements. These statements contain specific factual information from which a magistrate can independently determine probable cause.

Rothenbach further argues that the statements of the informant and Taylor are hearsay and are unreliable. A probable cause affidavit may rely on hearsay if the affidavit presents a substantial basis for crediting the hearsay. Satterwhite, 980 F.2d at 321. The affidavit stated that the informant had assisted law enforcement officers in prior investigations and prosecutions for drug trafficking. The affidavit also states that the informant accompanied Taylor to Rothenbach's premises where Taylor purchased marijuana, which demonstrates the basis of the informant's knowledge. This provides a substantial basis for crediting the statements of the informant.

Taylor's statements are statements against penal interest because they implicate him in a conspiracy to engage in drug trafficking. Statements against penal interest provide a substantial basis for crediting the statements. In addition, Taylor's statements are independently confirmed by the fact he purchased marijuana at Rothenbach's ranch. This provides a substantial basis for crediting Taylor's statements.

Rothenbach further challenges the validity of the affidavit to support a search warrant by claiming that it contains false statements. Rothenbach argues that there are inaccurate statements regarding the future plans of the law enforcement officials because the actual subsequent transaction varied in some details from the affidavit. These variances have no relevance to the determination of probable cause and do not call the credibility of the affidavit overall into question. Rothenbach also argues that the statement of the informant regarding the size of Rothenbach's ranch are inaccurate. The size of the ranch is also irrelevant to the issue of probable cause and this statement by the informant does not render the affidavit infirm.

Rothenbach points to testimony of law enforcement officials to argue that the affidavit is false. Detective Fowler testified that he had not read the transcript of a recorded conversation between the informant and Taylor, but the affidavit does not purport to be based upon review of the transcript. Therefore this testimony is irrelevant to the affidavit. Fowler also testified that the informant had not been onto the premises of Rothenbach's ranch and that law enforcement officials had not conducted surveillance on the premises of the ranch. The affidavit does not state

3

that the informant or any law enforcement personnel had been on the premises of the ranch, therefore Fowler's testimony does not conflict with the affidavit. FBI Agent Osa testified that the informant did not turn over any marijuana to him after accompanying Taylor to Rothenbach's ranch. This also does not conflict with the affidavit because the affidavit does not state that the marijuana was purchased by the informant for law enforcement officials. None of the alleged inaccuracies affect the credibility of the affidavit.

The affidavit contained facts from which a magistrate could determine probable cause. The statements were sufficiently creditable to support the affidavit. None of the alleged inaccuracies form any basis to question the affidavit as support for probable cause. Because the affidavit was not a "bare bones" affidavit, the good faith exception applies and the court does not reach the question of probable cause itself.

**Whether the evidence was insufficient to support a jury verdict finding Rothenbach guilty of conspiracy?**

The evidence included testimony that two days prior to the arrest of Rothenbach, the informant accompanied Taylor to Rothenbach's ranch where Taylor obtained a small quantity of marijuana from Rothenbach. There was further testimony that the informant negotiated with Taylor to purchase a two-pound sample from Rothenbach for the purpose of a later purchase of 300 pounds of marijuana. There was testimony that Agent Osa gave $1,500.00 to Taylor for the purchase of

the two-pound sample. There was testimony that shortly after Agent Osa gave Taylor the money, an airborne officer observed a van fitting the description of the van driven by Taylor enter Rothenbach's ranch, observed Rothenbach meet with the driver, and observed the van depart the ranch shortly thereafter.

Further evidence included testimony that shortly after the van left Rothenbach's ranch, Taylor returned to the location of the informant and Agent Osa handed the informant a bag containing two pounds of marijuana and told the informant that the transaction for 300 pounds of marijuana could not take place until the next day because the marijuana would have to be recovered from a hiding place. There was testimony that law enforcement officials seized $1250.00 from Rothenbach's truck and that the money was part of the $1500.00 given to Taylor by Agent Osa. There was testimony that Rothenbach informed law enforcement officers of the location of marijuana in the trunk of a car, stated that he did not believe marijuana should be illegal, and that he was trying to make ends meet. There was testimony that law enforcement officers searched the premises of Rothenbach's ranch and found scales and materials consistent with the packaging of large amounts of marijuana.

Physical evidence introduced at trial included at least 4 pounds of marijuana, including that which was delivered by Taylor and that which was seized on Rothenbach's premises. Other physical evidence included scales and packing materials. There was testimony that some of the packaging materials contained marijuana residue. There was testimony that law enforcement officers seized over

5

$11,000.00 in cash from Rothenbach's house.

Rothenbach testified that he did not provide any marijuana to Taylor, that he is a farmer and that he does not sell marijuana. Rothenbach argues that there is no direct evidence of his agreement to a conspiracy to distribute marijuana because the testimony linking him to the alleged transaction was solely from the informant and the law enforcement officers, none of whom negotiated directly with Rothenbach.

The elements of the offense of conspiracy are: 1) the existence of an agreement between two or more persons to possess marijuana with intent to distribute, 2) knowledge of the agreement, and 3) voluntary participation in it. U.S. v. Brito, 136 F.3d 397, 409 (5th Cir. 1998), cert. denied 118 S.Ct. 1817 (1998), and cert. denied 118 S.Ct. 2389 (1998), and cert. denied 119 S.Ct. 159 (1998). Proof of an overt act in furtherance of the conspiracy is not required. U.S. v. Lechuga, 888 F.2d 1472, 1476 (5th Cir. 1988). The jury may infer these elements from circumstantial evidence. Id., U.S. v. Cardenas, 9 F.3d 1139, 1158 (5th Cir. 1993), reh'g en banc denied 15 F.3d 1081 (5th Cir. 1994), cert. denied, 511 U.S. 1134 (1994). What the jury is permitted to infer is governed by a "rule of reason" and the jury may "use their common sense." Lechuga 888 F.2d at 1476. Intent to distribute may be inferred from the presence of distribution paraphernalia or large amounts of cash. Cardenas, 9 F.3d at 1158.

The jury was entitled to disbelieve Rothenbach's testimony in its entirety. The informant's testimony does not require corroboration. The testimony and physical evidence were sufficient for the jury to conclude beyond a reasonable

doubt that Taylor conspired with Rothenbach to sell 300 pounds of marijuana to the informant and Agent Osa. The evidence was sufficient to support the verdict that Rothenbach voluntarily and knowledgeably participated in an agreement with Taylor to possess marijuana with intent to distribute it.

**Whether the evidence was sufficient to support Rothenbach's conviction of possession of a firearm by a felon?**

The evidence included testimony that Rothenbach told law enforcement officers that he lived in the residence searched on June 18, 1999 and testimony that Rothenbach's mother told law enforcement officers that she lived in another house. There was testimony that the house searched contained several weapons under a bed in a bedroom. There was testimony that Rothenbach informed law enforcement officials that he had a pistol in a safe, then assisted the officers in unlocking a safe containing a nine millimeter pistol and $5000.00 in cash.

Rothenbach argues that the evidence is insufficient because the title to the property in question is in his mother's name and his mother lives in the house that was searched. Rothenbach argues that he gave up possession of all of his weapons to his mother many years prior. Rothenbach argues that mere occupancy of a premises subject to joint occupancy is not sufficient to support a verdict of possession, citing to U.S. v. Mergerson, 4 F.3d 337 (5th Cir. 1993), cert. denied 510 U.S. 1198 (1994).

The title to the property is irrelevant to the question of constructive

possession of weapons on the premises, because the title does not control the identity of persons with dominion or control over the premises. The jury was entitled to believe or disbelieve that Rothenbach's mother took possession of the weapons. Even if the jury believed that she took possession of the weapons, this does not compel the conclusion that Rothenbach did not maintain constructive possession or regain actual possession of the weapons.

The jury was entitled to disbelieve the testimony regarding the mother's occupancy of the house, but even if they credited such testimony, at best this merely establishes joint dominion or control over the premises. The 5th Circuit has ruled that in the event of joint occupancy of a premises, in addition to evidence of joint occupancy, there must be some circumstantial indicium of possession to support a verdict of possession. Mergerson, 4 F.3d at 349. The evidence includes testimony that Rothenbach stated that he had a gun in the safe, led officers to the safe, and assisted them in opening the safe. This evidence is sufficient to establish an "indicium of possession" of the nine millimeter pistol seized from the safe. The evidence was sufficient to support the jury determination beyond a reasonable doubt that Rothenbach possessed a firearm.


**Whether the district court erred in applying USSG § 2D1.1 to determine the applicable drug quantity for sentencing purposes?**

Rothenbach and Taylor both argue that the district court erred in pronouncing sentence based upon the quantity of 300 pounds of marijuana. Appellants agree that

the district court's finding of the quantity is reviewed for clear error. Appellants argue that Amendment 518 to Application Note 12 of USSG § 2D1.1 should be applied to reduce the quantity for sentencing to the approximately 2 pounds of marijuana delivered. Note 12, as amended, provides that the agreed-upon quantity shall be used unless the sale is complete and the amount delivered more accurately reflects the scale of the offense. U.S. v. Marmolejos, 140 F.3d 488, 490 (3rd Cir. 1998).

As indicated above, there was testimony that the 2 pounds delivered were a sample for the purpose of determining quality for the purchase of 300 pounds. In addition, there was testimony that Agent Osa gave Taylor $1,500.00 even though the sample only cost $1250.00. The excess over the cost was explained as money that would be applied to the larger purchase once the sample had been inspected. There was testimony that Taylor was in possession of some of the money from Agent Osa at his arrest subsequent to the delivery of the sample.

Appellants argue, based on Marmolejos, that the transaction was completed and that the amount actually delivered should control the sentencing. In Marmolejos, the appellant had negotiated to sell 5 kilograms of cocaine, but delivered only 4.96 kilograms. Marmolejos, 140 F.3d at 489. There was no claim in that case that the 4.96 kilograms was a precursor to another transaction which had been separately negotiated. In the case at bar, the testimony supports the district court's conclusion that the delivery of 2 pounds did not finalize the negotiated transaction.

Appellants argue alternatively that Note 12 should be applied on the basis that the defendants established that they did not intend to provide or were not reasonably capable of providing the agreed upon quantity. Marmolejos, 140 F.3d at 490. Appellants argue that law enforcement officials thoroughly searched Rothenbach's premises and recovered less than five pounds of marijuana including the delivered sample. Appellants further offer testimony that they did not negotiate to deliver 300 pounds of marijuana, do not fit drug dealer profiles and did not have the financial resources to facilitate such a large transaction. Under a review for clear error, this testimony would only establish Appellants' lack of intent or ability if the district judge were required to credit this testimony and disregard the testimony of the government witnesses.

The inability of the law enforcement officers to recover more marijuana does not compel the conclusion that Appellants were incapable of providing the 300 pounds. There was testimony that Rothenbach had access to 1500 acres of farm land in which marijuana could have been concealed. The testimony of Appellants concerning their intent and capabilities does not compel the district judge to conclude that Appellants did not intend to or were not capable of delivering 300 pounds of marijuana.

Appellants further argue that because the informant was the only person who directly negotiated with Taylor, the law enforcement officials lacked personal knowledge of the amount of the negotiations. Appellants argue that the personal knowledge of the informant is insufficient basis for the testimony regarding the

10

negotiations for 300 pounds of marijuana, therefore the district judge should not have applied that quantity to the determination of sentence. Appellants do not cite to any legal authority to the effect that the informant's testimony provides insufficient basis for the district judge to make this determination. This is merely an argument as to the weight that should be assigned to the evidence. This court reviewing for clear error is not at liberty to assess the weight of the evidence to reverse a finding of fact by the district court. The district court's determination of 300 pounds was supported by the evidence in the record and is not subject to reversal for clear error.

**Whether the district court erred in applying a 2-level enhancement for possession of a firearm and in failing to reduce the firearms offense to level six because Rothenbach possessed the firearms for a lawful sporting purpose or collection.**

Depending upon whether these issues were preserved by being raised before the district court or not, this Court reviews these matters for plain error or clear error. Under either standard, the evidence supports the district court's finding for sentencing. As indicated above, there was testimony that upon arrest, Rothenbach stated that he had a loaded weapon in a safe and assisted law enforcement officers in opening a safe from which they seized a nine millimeter pistol and $5000.00 in cash. The safe was located in a house with drugs, drug paraphernalia and several other firearms.

11

The testimony is sufficient for the district court to determine that Rothenbach possessed a firearm for enhancement purposes.  In addition, the district court was not required to find that the possession of a loaded nine millimeter pistol in a safe full of cash constitutes a collection or a lawful sporting purpose.

**Did the district court err in sentencing Rothenbach to 95 months for count 2 of the indictment?**

The sentencing for both counts against Rothenbach are grouped under USSG § 3D1.1.  Because the court affirms the conviction and sentence for Count 1, the sentence is proper irrespective of what the correct separate sentence for Count 2 would have been.

AFFIRMED.