

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-14-1999

# United States v Roberson

Precedential or Non-Precedential:

Docket 97-7309

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"United States v Roberson" (1999). *1999 Decisions.* Paper 283.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/283

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 14, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7309

UNITED STATES OF AMERICA,

v.

KEVIN ROBERSON,
Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. No. 88-cr-00173)

(District Court Judge: Honorable William W. Caldwell)

Argued: November 19, 1998

Before: GREENBERG and ALITO, Circuit Judges,
and GODBOLD, Senior Circuit Judge*

(Opinion Filed: October 14, 1999)

      WILLIAM A. BEHE
      ERIC PFISTERER (ARGUED)
      OFFICE OF THE UNITED STATES
       ATTORNEY
      Federal Building
      228 Walnut Street
      Harrisburg, PA 17108

      Counsel for Appellee
_____

* The Honorable John C. Godbold, United States Senior Circuit Judge for
the Court of Appeals for the Eleventh Circuit, sitting by designation.

STEPHEN M. LATIMER (ARGUED)
LOUGHLIN & LATIMER
131 Main Street
Suite 235
Hackensack, NJ 07601

Counsel for Appellant

OPINION OF THE COURT

ALITO, Circuit Judge:

The question presented for our review is whether applying AEDPA's gatekeeping provisions to a 28 U.S.C. S 2255 motion filed after AEDPA's effective date would have an impermissible retroactive result if the movant filed his first S 2255 motion prior to AEDPA's enactment. We conclude that the application of AEDPA's gatekeeping provisions to Kevin Roberson's second S 2255 motion would have no impermissible retroactive result, and thus we hold that amended SS 2244(b)(3)(A) and 2255 require us to deny Roberson's request for authorization to proceed with his second motion.

I.

On March 3, 1989, Kevin Roberson pleaded guilty to a felony information charging him with conspiracy to distribute crack cocaine, in violation of 21 U.S.C. SS 841(a)(1) and 846, distribution of crack cocaine, in violation of 21 U.S.C. S 841(a)(1), and aiding or abetting the distribution of crack cocaine, in violation of 21 U.S.C. S 841(a)(1) and 18 U.S.C. S 2. The District Court sentenced Roberson to 30 years of imprisonment on both the conspiracy and the distribution counts and ordered Roberson to serve the terms concurrently. By means of a judgment order, we affirmed Roberson's conviction on appeal and rejected his contention that the District Court lacked a reasonable factual basis to find by a preponderance of the evidence that his offense involved the distribution of at least 500 grams of cocaine base.

2

On July 17, 1991, Roberson, acting pro se, filed a motion under 28 U.S.C. S 2255 to vacate, set aside, or correct his sentence. See App. at 10-38. One of his arguments was that the sentencing court "lacked sufficient facts upon which to fairly or reasonably conclude that the defendant was responsible for the distribution of 500 grams or more of `crack', either individually or as a member of the conspiracy." App. at 24. On October 7, 1991, the District Court denied Roberson's S 2255 motion, holding that Roberson could not raise this argument in his collateral attack because we previously had rejected the same argument on direct appeal. Appellant's Br. at Tab 6. Roberson appealed, App. at 183, and we dismissed his appeal on January 31, 1992, for failure to prosecute. App. at 184.

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which, among other things, revised the standards and procedures governing S 2255 petitions. Prior to AEDPA's enactment, federal courts denied second or successive S 2255 motions if the government could demonstrate that the motion constituted an abuse of the writ. See McCleskey v. Zant, 499 U.S. 467, 494 (1991). Courts excused an abuse of the writ only if: (1) the applicant could establish cause and prejudice -- i.e., that "some objective factor external to the defense impeded counsel's efforts" to raise the claim earlier and that "actual prejudice result[ed] from the errors of which he complain[ed,]" id. at 493-94 (internal quotation marks and citations omitted); or (2) the applicant could demonstrate that "a fundamental miscarriage of justice would result from a failure to entertain the claim," id.

AEDPA, however, replaced the abuse-of-the writ doctrine articulated in McCleskey. Under AEDPA's new "gatekeeping" provisions, an applicant seeking to file a second or successive S 2255 motion must obtain from "the appropriate court of appeals . . . an order authorizing the district court to consider the application," 28 U.S.C.A. SS 2244(b)(3)(A), 2255 (West Supp. 1999), and a court of appeals may grant such an order only if the motion contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C.A. S 2255.

On May 28, 1997, Roberson filed a second S 2255 motion in which he raised two grounds for relief. First, he claimed that the sentencing court erred by applying United States Sentencing Guidelines ("U.S.S.G.") S 2D1.1(c)'s enhancement for cocaine base because the government had failed to prove by a preponderance of the evidence that the controlled substance involved in his offense was "crack," as opposed to some other form of cocaine base. App. at 9. Second, he claimed that his counsel at sentencing and on direct appeal was constitutionally ineffective for failing to raise this argument. Id.

The District Court dismissed Roberson's petition, holding that it did not have authority under AEDPA to entertain Roberson's second S 2255 motion unless we issued an order authorizing it to do so. Appellant's Br. at Tab 4. Roberson appealed. As we stated above, AEDPA's amendments require S 2255 movants to file a motion in the appropriate court of appeals for an order authorizing the district court to consider a second or successive application. See 28 U.S.C.A. S 2244(b)(3)(A). Recognizing that the application of AEDPA's new gatekeeping provisions to Roberson's second S 2255 motion might be impermissibly retroactive, we requested that the parties address the following question: whether applying AEDPA's gatekeeping provisions to a second S 2255 motion, which the applicant filed after AEDPA's effective date, would produce an impermissible retroactive result if the applicant filed his first S 2255 motion before AEDPA's enactment.1

_____

1. Roberson also argues that if we preclude him from bringing his claims under S 2255, he should be permitted to bring them through a petition for a writ of habeas corpus under 28 U.S.C. S 2241(c)(3). Appellant's Br. at 13. "Because there is no petition under S 2241 before us, we decline to address this contention." See Fed. R. App. P. 22(a); United States v. Ortiz, 136 F.3d 161, 168 (D.C. Cir. 1998).

II.

We recently addressed a similar retroactivity question in
In re Minarik, 166 F.3d 591 (3d Cir. 1999). In that case, the
prisoner filed his first federal habeas petition under 28
U.S.C. S 2254 prior to AEDPA's passage, butfiled his
second S 2254 motion after AEDPA's effective date. We held
that the application of AEDPA's gatekeeping provisions to
Minarik's second petition had no impermissible retroactive
effect. Id. at 608. In reaching this result, we were guided by
two Supreme Court decisions: Landgraf v. USI Film Prods.,
511 U.S. 244 (1994), and Lindh v. Murphy, 521 U.S. 320
(1997). We interpreted these cases as establishing the
following three principles:

> 1. There is a strong presumption against applying a
> statute in a manner that would attach "new legal
> consequences" to events completed before the statute's
> enactment, i.e., a manner that would "impair rights a
> party possessed when he acted, increase a party's
> liability for past conduct, or impose new duties."
> Landgraf, 511 U.S. at 280, 114 S.Ct. 1483.

> 2. If Congress has focused on the issue, "has
> determined that the benefits of retroactivity outweigh
> the potential for disruption or unfairness," and has
> provided unambiguous evidence of its conclusion by
> directing that retroactive effect be given, then, and only
> then, will the presumption be overridden.

> 3. Consistent with these principles, normal rules of
> statutory construction "may apply to remove . . . the
> possibility of retroactivity." Nothing short of an
> unambiguous directive, however, will justify giving a
> statute a retroactive effect. Thus, when normal rules of
> statutory construction indicate that a statute is
> intended to be applied in a manner involving no
> retroactive effect, a Court need inquire no further. On
> the other hand, if such construction suggests that a
> retroactive effect may have been intended, the
> traditional presumption nevertheless bars retroactive
> application unless an unambiguous congressional
> directive is found.

In re Minarik, 166 F.3d at 597–98.

5

Informed by these principles, we turn to Roberson's argument that applying AEDPA's gatekeeping provisions to his second S 2255 motion is impermissibly retroactive. We begin our analysis by noting that the gatekeeping provisions at issue here, as in Minarik, are part of AEDPA's chapter 153 amendments. See AEDPA, SS 105–06, Pub.L. No. 104–132, 110 Stat. 1220–21 (1996). Congress did not provide unambiguous evidence of its intent to apply AEDPA's chapter 153 amendments to cases in which a prisoner filed his first S 2255 or S 2254 motion prior to AEDPA's effective date. See Lindh, 521 U.S. at 327–29; Minarik, 166 F.3d at 599; United States v. Ortiz, 136 F.3d 161, 165 (D.C. Cir. 1998); In re Hanserd, 123 F.3d 922, 924 (6th Cir. 1997); Burris v. Parke, 95 F.3d 465, 468 (7th Cir. 1996) (en banc).

Furthermore, we held in Minarik that normal rules of statutory construction do not remove the possibility of retroactivity where a prisoner's first and second S 2254 petitions straddle AEDPA's effective date. See 166 F.3d at 598. We stated:

> Lindh held that AEDPA's text, read in light of normal principles of statutory interpretation, evidences a congressional intent that AEDPA's chapter 153 amendments should generally be applied to petitions, like Minarik's, filed after April 24, 1996, the effective date of the Act, but not to petitions, like Lindh's, filed before. This does not resolve the issue before us, however. The finding of congressional intent in Lindh was based on the drawing of a negative inference from Congress's express mandate that AEDPA's new rules regarding certain death penalty cases apply to pending cases. Because Congress had expressly provided for application to pending capital cases, but not to pending non–capital cases, it was a fair inference that Congress did not intend retrospective application to the latter. Landgraf and Lindh make clear, however, that while such an inference is sufficient to eliminate the possibility of a retroactivity problem, it is not the kind of unambiguous statement that will justify overriding the judicial presumption against retroactivity in a case where a retroactivity problem exists.

6

Id. Because AEDPA's chapter 153 amendments include the gatekeeping provisions for S 2255 motions, we hold that our analysis in Minarik applies with equal force here.

Having determined that Congress did not provide unambiguous evidence for the retroactive application of the gatekeeping provisions and that normal rules of statutory construction do not remove the possibility of the gatekeeping provisions' retroactive application,"we now turn to a case-specific analysis of whether applying AEDPA's [gatekeeping provisions to Roberson's second S 2255 motion] would have a genuine retroactive effect by `attach[ing] new legal consequences to events completed before [AEDPA's] enactment.' " Minarik, 166 F.3d at 599 (quoting Landgraf, 511 U.S. at 270). Minarik, which is binding on us, is quite clear that the relevant question is whether the application of the gatekeeping provisions would produce a genuine retroactive effect in the particular case at hand, not whether it would generally do so in a broader class of cases into which the case at hand falls. See 166 F.3d at 599 (emphasis added) ("If applying AEDPA's habeas corpus amendments would produce a genuine retroactive effect in Minarik's case, then Landgraf's default rule prohibits their application.' ")

Roberson argues that AEDPA's gatekeeping provisions attach "new legal consequences" to his firstS 2255 motion. Appellant's Br. at 9-11. Specifically, he claims that under pre-AEDPA law, he could have established cause and prejudice and that, consequently, a federal court would have entertained his second S 2255 motion. He concedes that he cannot satisfy AEDPA's new substantive standards,2

_____

2. Roberson does not argue that the gatekeeping provisions' procedural requirement -- viz., that an applicant seeking to file a second or successive S 2255 motion in the district courtfirst obtain authorization from the court of appeals -- is impermissibly retroactive. This argument is foreclosed by our decision in Minarik, 166 F.3d at 599 ("Section 2244(b)(3)(A) . . . is a change in procedural law which falls within the firmly established `procedural change' category described in Landgraf that may be retrospectively applied.") (citing Landgraf, 511 U.S. at 275 ("Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.")).

see Appellant's Br. at 10–11, and he argues, therefore, that because AEDPA's gatekeeping provisions impair a right he possessed when he filed his first S 2255 motion, applying them in his case is impermissibly retroactive.3

As previously noted, Roberson raises two grounds for relief in his second S 2255 motion. First, he claims that the District Court erred by applying S 2D1.1(c)'s enhanced sentencing provisions for crack because the government failed to prove by a preponderance of the evidence that the controlled substance he pleaded guilty to distributing and conspiring to distribute was crack. See App. at 9. He contends that he pleaded guilty to distributing and conspiring to distribute a form of cocaine base that is not subject to S 2D1.1(c)'s enhanced sentencing provisions for crack. See id. Second, he claims that his attorney at sentencing and on direct appeal was constitutionally ineffective for failing to argue, based on S 2D1.1(c)'s distinction between crack and other forms of cocaine base, that Roberson should not have been sentenced under the enhanced sentencing provisions for crack. See id . We conclude that Roberson had cause under pre–AEDPA law for not including these two grounds in his first S 2255 motion. We also conclude, however, that he suffered no

_____

3. Implicit in his concession is an admission that he also cannot establish that a fundamental miscarriage of justice would result from a failure to entertain his claims. One of S 2255's new substantive standards requires movants to proffer "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C.A. S 2255. Thus, Roberson acknowledges that the claims in his second S 2255 motion -- i.e., that the District Court erred by applying U.S.S.G. S 2D1.1(c)'s enhanced sentencing provisions for crack and that his counsel was constitutionally ineffective for failing to raise this error
-- do not constitute newly discovered evidence that is sufficient to establish by clear and convincing evidence that he is not guilty of the underlying offenses. In order to prove that his case implicates a fundamental miscarriage of justice, Roberson needs to establish that he was "actually innocent." See Bousley v. United States, 118 S. Ct. 1604, 1611 (1998); Murray v. Carrier, 477 U.S. 478, 496 (1986). Because he concedes that he cannot meet S 2255's innocence standard, he likewise cannot satisfy the "actual innocence" standard of pre–AEDPA law.

8

prejudice as a result of these alleged errors and thus that a district court would have denied his second S 2255 motion under pre-AEDPA law. We therefore hold that AEDPA's gatekeeping provisions do not have an impermissible retroactive effect upon his second S 2255 motion.

III.

We find that Roberson had "cause" for not raising these two grounds in his first S 2255 motion, which he filed in July 1991, because the legal distinction between"crack" and "cocaine base" for sentencing purposes did not exist until November 1, 1993, and because Roberson had no duty to anticipate changes in the law. See Sistrunk v. Vaughn, 96 F.3d 666, 670-71 (3d Cir. 1996); Government of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). In 1993, the Sentencing Commission amended S 2D1.1(c) to include the following definition of cocaine base:

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. S 2D1.1 (Note D to Drug Quantity Table). Prior to 1993, the Sentencing Guidelines had not defined the term "cocaine base" in S 2D1.1(c), and no court of appeals had held that this term referred only to "crack" and not to other forms of cocaine base. See United States v. Rodriguez, 980 F.2d 1375, 1378 (11th Cir. 1992); United States v. Jones, 979 F.2d 317, 320 (3d Cir. 1992); United States v. Wheeler, 972 F.2d 927, 930 (8th Cir. 1992); United States v. Jackson, 968 F.2d 158, 162 (2d Cir. 1992); United States v. Lopez-Gil, 965 F.2d 1124, 1134 (1st Cir. 1992) (per curiam); United States v. Shaw, 936 F.2d 412, 416 (9th Cir. 1991);4

_____

4. We are aware of the Sentencing Commission's statement that the Ninth Circuit held in United States v. Shaw, 936 F.2d 412 (9th Cir. 1991), that "cocaine base means crack." See U.S.S.G., App. C, Amend. 487 (1997). We disagree with the Sentencing Commission's interpretation of Shaw and note that in determining whether a claim is

United States v. Turner, 928 F.2d 956, 960 (10th Cir. 1991);
United States v. Levy, 904 F.2d 1026, 1033 (6th Cir. 1990);
United States v. Metcalf, 898 F.2d 43, 46-47 (5th Cir. 1990);
United States v. Brown, 859 F.2d 974, 976 (D.C. Cir. 1988).

The Supreme Court has held that there may be cause for omitting a claim when it " `is so novel that its legal basis is not reasonably available to counsel.' " Bousley v. United States, 118 S. Ct. 1604, 1611 (1998) (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). In Bousley, the petitioner pleaded guilty in 1990 to "using" a firearm in violation of 18 U.S.C. S 924(c) and later sought a writ of habeas corpus under 28 U.S.C. S 2241, which the District Court treated as a motion pursuant to 28 U.S.C. S 2255. Bousley, 118 S. Ct. at 1607. The District Court dismissed the petitioner's S 2255 motion, and he appealed to the Court of Appeals for the Eighth Circuit. See id. While Bousley's appeal was pending, the Supreme Court decided Bailey v. United States, 516 U.S. 137 (1995), in which it held that a conviction for "use" under S 924(c)(1) required the government to show not only "mere possession," but "active employment of the firearm" as well. Bailey, 516 U.S. at 144. The Eighth Circuit subsequently affirmed the District Court's decision, rejecting Bousley's argument that Bailey should be applied retroactively. See Bousley, 118 S. Ct. at 1608.

_____

so novel that it constitutes cause to excuse an abuse of the writ, we are not bound by the Sentencing Commission's reading of a circuit court's opinion. In Shaw, the defendant argued that he could not be sentenced under the guideline provision applicable to offenses involving "cocaine base." The defendant maintained "the legal definition of `cocaine base' is a cocaine compound containing a hydroxylion (OH-) such that it is a `base,' as that term is used in chemistry." 936 F.2d at 414. "Because the government's expert did not say anything about the presence of a hydroxylion," the defendants argued that they could not be sentenced for cocaine base. Id. Rejecting this argument, the court wrote: "[W]e conclude that . . . the Commission must have intended the term `cocaine base' to include `crack,' or `rock cocaine,' " and that the Commission did not intend "the term `cocaine base' to be defined by the presence of a hydroxylion or by its testing basic rather acidic." Id. at 416 (emphasis added). Plainly, a holding that the term "cocaine base" includes crack is not the same as a holding that "cocaine base means crack." U.S.S.G., App. C, Amend. 487 (1997).

10

On appeal to the Supreme Court, Bousley argued, in an attempt to establish cause, that the legal basis for his claim was not "reasonably available to counsel at the time his plea was entered." Bousley, 118 S. Ct. at 1611 (internal quotation marks and citation omitted). The Court rejected this argument, noting that it "was most surely not a novel one" and that "at the time of petitioner's plea, the Federal Reporters were replete with cases involving challenges to the notion that `use' is synonymous with mere `possession.' " Id. (citations omitted). Here, however, the argument that cocaine base, as used in S 2D1.1, included only crack and excluded all other forms of cocaine base was novel at the time of Roberson's first S 2255 motion. The Federal Reporters, as we already noted, did not contain a single case reaching this conclusion. Accordingly, we hold that Roberson had cause for failing to raise in hisfirst S 2255 motion the two grounds that he advanced in his second S 2255 motion.5

Although we find that Roberson could have established cause for the two claims he raised in his second S 2255

_____

5. Roberson contends that he has established "cause" under McCleskey because he proceeded pro se in his first S 2255 motion. Appellant's Br. at 11 n.4. We disagree. In McCleskey, the Court held that the application of the cause and prejudice standard does not "imply that there is a constitutional right to counsel in federal habeas corpus." 499 U.S. at 495 (citing Pennsylvania v. Finley, 481 U.S. 551, 555 (1987)). Accordingly, the Court, in setting forth a single standard for "cause," made no distinction between pro se defendants and those who are represented by counsel. See Cornman v. Armontrout, 959 F.2d 727, 729 (8th Cir. 1992) (stating that the requirement of cause in the abuse of the writ context "is not lessened by the fact that the petitioner may . . . have filed the initial habeas petition pro se"); Saahir v. Collins, 956 F.2d 115, 118 (5th Cir. 1992) ("Because a habeas petitioner is not constitutionally entitled to any legal representation in waging a collateral attack, the McCleskey `knew or reasonably should have known' standard for cause applies irrespective of whether he was represented by counsel when he filed any previous petitions."); Rodriguez v. Maynard, 948 F.2d 684, 687 (10th Cir. 1991) ("We hold that, in abuse of the writ cases, the cause and prejudice standard applies to pro se petitioners just as it applies to petitioners represented by counsel."). We hold, therefore, that the fact that Roberson filed his first S 2255 petition pro se does not constitute cause in the abuse of the writ context.

motion, we hold that he could not have demonstrated prejudice for either one. We will address each claim in turn.

A.

Roberson claims that the government did not prove by a preponderance of the evidence that the controlled substance in question was "crack." Appellant's Br. at 10. Relying on our decision in United States v. James, 78 F.3d 851 (3d Cir. 1996), Roberson contends that he did not plead guilty to possession or distribution of crack. Appellant's Reply Br. at 3. Rather, he asserts that he pleaded guilty to possession or distribution of cocaine base. Id. In further support of his argument, Roberson notes that "there was no laboratory analysis of the substances seized." Id. Roberson argues, based on this record, that the District Court erred in applying S 2D1.1(c)'s enhanced sentencing provision for crack and that this error resulted in prejudice. We reject Roberson's argument for three reasons.

First, he waived the argument that he pleaded guilty to distributing a form of cocaine base other than crack. "A waiver of rights must be knowing and voluntary." James, 78 F.3d at 856 (citing United States v. Newman, 912 F.2d 1119, 1123 (9th Cir. 1990) (voluntary plea requires real notice of the true nature of the charge)). In James, the defendant pleaded guilty to selling 57.4 grams of cocaine base. See id. at 853. The District Court, pursuant to U.S.S.G. S 2D1.1(c), sentenced James under the enhanced sentencing provisions for crack. James argued that the District Court erred in applying S 2D1.1(c)'s enhancement for crack because he did not plead guilty to possession or distribution of crack. See id. at 856.

We found that the record, on the whole, supported his argument. There, the indictment charged James "with distribution and possession of a `substance containing a detectable amount of cocaine base.' " Id . at 855. Additionally, the parties stipulated in the plea agreement that "for purposes of determining . . . James' offense level under the Sentencing Guidelines, . . . the relevant quantity of cocaine base is 57.4 grams." Id. at 855-56. Finally, during the plea colloquy, James admitted that he

12

distributed "cocaine base," but made no such admission with respect to "crack." Id. at 856. While we noted that the prosecutor referred to the controlled substance in question three times as "crack cocaine,"6 we held that, "without more, the causal reference to crack by the Government in the colloquy with the court over `the relevant quantity of cocaine base in determining Mr. James's offense level' did not amount to a "knowing and voluntary admission that the cocaine base constituted crack." Id. at 856.

Here, the superseding information charged Roberson with distributing and conspiring to distribute "a substance containing cocaine base, known as `crack' cocaine." App. at 178-79. Moreover, Roberson pleaded guilty in his plea agreement to "distribution of crack cocaine" and "conspiracy to distribute crack cocaine." App. at 169. Thus, in contrast to James, Roberson's plea to distributing and conspiring to distribute "crack" was knowing and voluntary.

Second, the government proved by a preponderance of the evidence that the substance in question was crack. We review for clear error a district court's factual determination that the substance a defendant distributed was crack. See United States v. Dent, 149 F.3d 180, 189 (3d Cir. 1998); United States v. Roman, 121 F.3d 136, 140 (3d Cir. 1997). " `Factual findings are clearly erroneous if the findings are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence.' " Roman, 121

_____

6. During the plea colloquy, the prosecutor stated:

> The parties agree that the relevant quantity of cocaine base in determining Mr. James's offense level is 57.4 grams. That's the
total
> net weight of the crack cocaine that was purchased in each of the three transactions that comprise Counts One, Two and Three.
>
> . . .
>
> Mr. James exchanged a plastic baggy that contained some suspected crack cocaine. That was sent to a lab, analyzed, and was determined to be -- I believe the net weight was 22.0 grams of cocaine base or crack cocaine.

78 F.3d at 856 (emphasis in original).

13

F.3d at 140 (quoting Davin v. United States Dep't of Justice, 60 F.3d 1043, 1049 (3d Cir. 1995) (internal quotations omitted)).

Here, unlike James, we note that the government, the witnesses, and even Roberson's trial attorney consistently referred to the controlled substance in question as crack cocaine. See, e.g., App. at 47 (testimony of Troy Smallwood); App. at 68-69 (testimony of Ryan Edward Palmer); App. at 74, 122-23 (testimony of Senia Patricia Lewis); App. at 88 (testimony of Jamie Herrell); App. at 82, 122 (defense counsel); App. at 142 (prosecutor's comments to the District Court Judge). Because S 2D1.1 defines "crack" as "the street name for a form of cocaine base," see U.S.S.G. S 2D1.1(c), Note (D) to Drug Quantity Table, we find the witnesses' testimony especially compelling. See United States v. Hall, 109 F.3d 1227, 1236 (7th Cir. 1997).

Moreover, we noted in Roman that "where a written plea agreement is entered[,] questions of notice and proof at sentencing could be greatly minimized by simply including language in the plea agreement by which a defendant acknowledges the identity of the drugs involved." 121 F.3d at 141 n.4. Here, as we stated above, Roberson pleaded guilty to distributing "crack." Therefore, any question of proof we have concerning whether Roberson distributed crack is "greatly minimized."

Roberson also argues that the government failed to meet its burden of proof, at least in part, because it did not perform a laboratory analysis of the substance at issue. Appellant's Reply Br. at 3. We find this argument unpersuasive. It is not necessary for the government to perform a chemical analysis to prove that the substance at issue is crack, as opposed to another form of cocaine base. See Dent, 149 F.3d at 190; Roman, 121 F.3d at 141.

Third, Roberson cannot establish prejudice because the 1993 amendment to S 2D1.1(c) ("Amendment 487") effected a substantive change in the law, and substantive amendments -- in contrast to clarifying amendments-- are not given retroactive effect. See U.S.S.G.S 1B1.11(b)(2) (1998); United States v. Marmolejos, 140 F.3d 488, 490 (3d Cir. 1998). As we stated in Marmolejos, "[t]here is no bright-

14

line test for determining whether an amendment to the Guidelines `clarifies' the existing law; `these categories [are] unclear, and as is usually the case, there are factors supporting either side.' " 140 F.3d at 491 (quoting United States v. Prezioso, 989 F.2d 52, 53 (1st Cir. 1993)). Among other factors, we have considered: (1) "whether, as a matter of construction, the guideline and commentary in effect at that time is really consistent with the amended manual," United States v. Bertoli, 40 F.3d 1384, 1405 (3d Cir. 1994); and (2) whether the amendment resolves an ambiguity in the guideline or commentary. See Marmolejos, 140 F.3d at 491–93.

Amendment 487 overruled prior constructions of S 2D1.1(c). Compare United States v. Jones, 979 F.2d 317, 320 (3d Cir. 1992) (holding that crack is a form of cocaine base), with U.S.S.G. App. C, Amend. 487 (1997) ("Under this amendment, forms of cocaine base other than crack . . . will be treated as cocaine."). Because Amendment 487 overruled our prior construction of the guideline, we are inclined to hold that it effected a substantive change. See Bertoli, 40 F.3d at 1405.

This holding is supported by our conclusion that Amendment 487 did not resolve a pre-existing ambiguity in S 2D1.1(c)'s definition of "cocaine base." Prior to Amendment 487's effective date, no court of appeals held that cocaine base meant only crack and excluded all other forms of cocaine base. Supra, at 9–10. Unlike our decision in Marmolejos, where we concluded that the Sentencing Commission's amendment resolved an ambiguous application note, see Marmolejos, 140 F.3d at 491, S 2D1.1(c) was not ambiguous prior to Amendment 487.

In Marmolejos, we examined Application Note 12 to S 2D1.1, which provided instructions for determining the quantity of controlled substances when the offense involved a negotiation to traffic such substances. 140 F.3d at 490. We noted that "[t]he prior text of the application note provided no guidance as to what amount of drugs a court should consider in sentencing a defendant convicted of participating in a completed transaction." Id . at 491. We held, therefore, that "the terms of the previous application note were facially ambiguous; the note spoke only to

15

uncompleted deals." Id. Here, the prior text of S 2D1.1(c) provided the courts with guidance as to what type of controlled substance should be subject to an enhanced sentence -- i.e., cocaine base. We discern no facial ambiguity in the pre-1993 version of S 2D1.1(c) such that one could reasonably read the term cocaine base to mean only crack. Accordingly, we view Amendment 487 as a substantive amendment, which narrowed the category of controlled substances subject to enhanced penalties from all forms of cocaine base to a single type, crack.

As a final point, we note that our result is supported by the four other courts of appeals that have issued a published opinion addressing the retroactivity of Amendment 487. See United States v. Booker, 70 F.3d 488, 489-90 (7th Cir. 1995); United States v. Kissick, 69 F.3d 1048, 1053 (10th Cir. 1995); United States v. Samuels, 59 F.3d 526, 529 (5th Cir. 1995); United States v. Camacho, 40 F.3d 349, 354 (11th Cir. 1994).

B.

We now turn to the second claim Roberson raised on appeal -- viz., that his attorney at sentencing and on direct appeal was constitutionally ineffective for failing to argue, based on the legal distinction between crack and other forms of cocaine base, that Roberson should not have been sentenced under S 2D1.1's enhanced sentencing provisions.

To succeed on an ineffective assistance of counsel claim, Roberson must show that his attorney's performance fell outside "the wide range of professionally competent assistance," Strickland v. Washington, 466 U.S. 668, 689 (1984), and that his attorney's deficient performance resulted in prejudice, which the Supreme Court has defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In reviewing counsel's performance, we "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. In this case, Roberson essentially contends that his attorney's performance was deficient because he failed to

16

argue, based on the legal distinction between crack and other forms of cocaine base, that Roberson should not have been sentenced under S 2D1.1(c)'s enhanced sentencing provisions for cocaine base.7 App. at 9. We are unpersuaded.

The District Court sentenced Roberson in July 1989, App. at 185, and we denied his direct appeal in December 1989. As we have already observed, the Sentencing Commission did not create a legal distinction between crack and other forms of cocaine base until almost four years later, and prior to that time, no court of appeals had held that cocaine base, as defined in S 2D1.1(c), meant only crack and no other form of cocaine base. Supra , at 9-10. Because "there is no general duty on the part of defense counsel to anticipate changes in the law," Sistrunk, 96 F.3d at 670-71 (quoting Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)), we hold that counsel's failure to make an argument based on S 2D1.1(c)'s distinction between crack and cocaine base does not fall outside "the wide range of professionally competent assistance." And since we conclude that Roberson failed to show that his counsel's performance was deficient, we need not reach the issue of whether he was prejudiced by his attorney's representation. See Sistrunk, 96 F.3d at 673 n.8 (citing Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

IV.

Accordingly, we conclude that a district court would have precluded Roberson from filing his second S 2255 motion under pre-AEDPA law. Therefore, we hold that applying AEDPA's gatekeeping provisions to his second S 2255 motion cannot work an impermissible retroactive effect.

_____

7. We note that when Roberson filed his firstS 2255 motion pro se approximately two years after the District Court imposed its sentence, see App. at 23-24, Roberson did not distinguish between crack and cocaine base.

17

Because Roberson's second S 2255 motion does not satisfy AEDPA's new substantive standards for filing a second motion, we deny Roberson's request for authorization to proceed with his second motion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

18