

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-15-2008

# USA v. Mollica

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2600

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Mollica" (2008). *2008 Decisions.* Paper 843.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/843

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2600
_____

UNITED STATES OF AMERICA

v.

GERARD MOLLICA,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 06-cr-00297-4)
District Judge:  The Honorable William J. Nealon
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 3, 2008

Before:  FISHER and JORDAN, *Circuit Judges*, YOHN,[*] *District Judge*.

(Filed: July 15, 2008 )

_____

OPINION

_____

_____

[*]The Honorable William H. Yohn, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

YOHN, *District Judge*.

Gerard Mollica appeals the District Court's judgment of conviction and sentence, asserting that the District Court abused its discretion in denying his motion to withdraw his guilty plea. He alleges that he is actually innocent and that his attorney's erroneous estimation of the length of his sentence caused him to plead guilty. For the following reasons, we will affirm.

**I.**

Mollica was arrested on September 18, 2006 and charged with conspiracy to distribute cocaine and crack. Mollica and plea counsel entered into plea negotiations with the government, although Mollica now insists he was merely a drug user and not a conspirator. Plea counsel estimated that Mollica likely would be sentenced to approximately sixty months, based on Mollica's criminal record disclosed on a bail sheet, the anticipated sentencing guidelines, and a downward departure motion by the government in exchange for Mollica's substantial assistance to the government. When making this estimate, plea counsel failed to anticipate that Mollica would be classified as a career offender because plea counsel was relying on an apparently incomplete bail history obtained from the government and reviewed with Mollica. On November 17,

2006, Mollica and plea counsel signed a written plea agreement and an accompanying Statement of Defendant.[1]

A change-of-plea hearing began on the morning of December 13, 2006. During a recess precipitated by Mollica's prison health care concerns, Mollica, plea counsel, and government counsel discussed Mollica's plea. According to Mollica, during these discussions government counsel and plea counsel together reaffirmed the sixty-month sentence estimate. The parties returned to the courtroom for the plea colloquy that afternoon, and the court accepted Mollica's guilty plea.

The presentence investigation report, dated February 26, 2007, concluded on the basis of Mollica's complete criminal history (which was longer than that included in his bail history) that Mollica was a career offender under the sentencing guidelines. The report calculated a sentencing range of 262 to 327 months' imprisonment and noted that a downward departure might be warranted based on Mollica's substantial assistance in the government's investigation.

As a result, on March 29, 2007, Mollica filed a motion to withdraw his guilty plea. After a hearing, the District Court denied that motion on May 4, 2007. On May 16, 2007,

---

[1]By signing the Statement of Defendant, Mollica and plea counsel certified that they understood the consequences of the plea agreement, including the maximum sentence and waiver of trial rights. The Statement of Defendant also included representations that Mollica was admitting the facts of the indictment by pleading guilty, was satisfied with his attorney's representation, and had not received any promise, threat, or inducement to enter into the plea agreement.

the District Court sentenced Mollica to 168 months' imprisonment to be followed by four years' supervised release, as well as a $100 special assessment. The sentence included a four-level downward departure based on Mollica's substantial assistance to the government. On May 25, 2007, Mollica filed a timely notice of appeal.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over the final judgment of conviction and sentence pursuant to 28 U.S.C. § 1291. The sole issue on appeal is whether the District Court erred in denying Mollica's motion to withdraw his guilty plea prior to sentencing. We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).

## III.

We look to three factors in evaluating whether a defendant may withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) if the defendant has met his burden with respect to one of the first two factors, whether the government would be prejudiced by the withdrawal. *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001); *see also United States v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986) ("[T]he government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of the plea.'"). "A shift in defense tactics, a change of mind, or the fear of

punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Brown*, 250 F.3d at 815 (citing *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992), *superceded by statute on other grounds as stated in United States v. Roberson*, 194 F.3d 408 (3d Cir. 1999)). The defendant bears the burden of showing a fair and just reason for withdrawing a guilty plea. *See Brown*, 250 F.3d at 815; *Gov't of V.I. v. Berry*, 631 F.2d 214, 220 (3d Cir. 1980).

The District Court did not abuse its discretion in denying Mollica's motion to withdraw his guilty plea. In ruling from the bench, the District Court noted the three factors to be considered:

> Now, as counsel has pointed out, the three areas that have to be explored when there's an attempt to withdraw a guilty plea is that the Defendant asserts his innocence; and that there must be—the assertion must be buttressed by facts in the record that support the claimed defense.
> No. 2, it would be prejudicial to the Government if the withdrawal was allowed.
> And No. 3, the strength of the Defendant's reasons for moving to withdraw his plea.

(R. at 85.) After evaluating the evidence in the record and the testimony relevant to innocence and the reasons for seeking to withdraw the plea, the District Court concluded that Mollica was not a credible witness and had not met his burden of showing why his guilty plea should be withdrawn. (R. at 85-86.)

5

**A.**

Mollica's evidence with respect to the first factor—the defendant's assertion of his innocence—is insufficient to permit withdrawal of his guilty plea. "Bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Jones*, 336 F.3d at 252. "Assertions of innocence must be buttressed by facts in the record that support a claimed defense," and not simply by any inference that filing a motion to withdraw a guilty plea creates. *Id.* at 252-53 (quoting *Brown*, 250 F.3d at 818). The defendant must also explain the reason for his contradictory positions. *Id.* at 253.

The District Court's conclusion as to the first factor is supported by the record and does not evidence an abuse of discretion. The District Court concluded that Mollica's assertion that he was only a drug user and not a conspirator is not buttressed by the record: "I can say there's very little in the record, except the Defendant's bare testimony that he's innocent, to buttress this particular contention. So I would conclude that the assertion of innocence is inadequate and is not buttressed with sufficient portions of the record that would sustain that particular belated claim." (R. at 85.) The District Court stated, moreover:

> I can't think of anything else that could have been added to the [plea colloquy] that would have allowed the Defendant to proclaim innocence at that time. He was asked whether he understood the nature of the proceedings, whether he was competent to proceed.
> . . .
> And, furthermore, in response to the oral colloquy, he was questioned on his innocence, and never once gave the slightest indication

6

that he was being forced into pleading guilty or that he had any hesitation or reluctance to enter a plea of guilty.

(R. at 85.)

On appeal, Mollica supports his assertion of innocence by pointing to statements made during the hearing on his motion to withdraw his guilty plea. He testified that days after entering his guilty plea, he wrote to plea counsel asking to go to trial. According to his testimony, the letter stated:

> I can't sleep at night knowing that I'm going to do five years for this thing, and you got drug dealers that are selling kilos of coke and getting the same five years as me, and it's wrong. And I want to go to trial because I'm not guilty of this crime.

(R. at 71.) The letter referenced in this testimony does not appear to have been entered into evidence in the District Court, and it is not in the record before this court. Plea counsel testified that Mollica "might have" requested to withdraw his guilty plea some time in December 2003 and that "[a]t sometime after the plea" Mollica asserted to plea counsel that he was not a conspirator but only a drug user. (R. at 82.) Mollica does not buttress his claim of innocence with any evidence, but simply reiterates it.

Furthermore, during the plea colloquy Mollica repeatedly admitted his guilt. After the government counsel outlined the evidence that would be presented at trial, the court asked, "Mr. Mollica, you have heard Government counsel outline the evidence that would be presented against you. Do you disagree with anything he had to say?" Mollica answered, "No." (R. at 141-42.) The court confirmed, "Is everything he said true and

correct?" and Mollica answered, "Yes." (R. at 142.) When asked by the court "Are you guilty as charged in Count 1?" Mollica replied, "Yes, I am." (R. at 142.) The court repeated this question, and Mollica again answered, "Yes, I am." (R. at 143.) Moreover, at the hearing on Mollica's motion to withdraw his plea, Mollica told the court that he would plead guilty again if a promise that he would be sentenced to sixty months were in writing. (R. at 75.) These statements are inconsistent with his assertions of innocence.

To explain his contradictory statements about his innocence, Mollica asserts that during the plea colloquy his mental state was poor. When asked by the District Court why he admitted to the factual basis for the conspiracy conviction during the plea colloquy, Mollica responded:

> Truthfully, sir, at that time—after that whole thing downstairs, my mind was—I would just agree to anything. I just wanted to get away from everybody. I wanted to go back to my cell. . . . I was confused.

(R. at 71.) However, the District Court concluded that Mollica's mental state did not prevent him from understanding the plea colloquy. During the morning session, when Mollica's health care needs were addressed, the District Court

> was impressed by the recollection, the lucidity, the specificity of the Defendant's comments concerning his medical difficulties and the absence of treatment as requested. And it would certainly appear to [the court] that at that time of the day in any event, he was very much in control of himself and of his thoughts.

(R. at 85.) Before the District Court recessed that morning, Mollica stated, without prompting, "I'm going to plead guilty, Your Honor." (R. at 85.) That statement indicated

8

to the District Court "that this Defendant had in his mind entering a plea of guilty and wanted the Court to know about it." (R. at 85.) Furthermore, plea counsel explained that, notwithstanding Mollica's prior agitation, that afternoon "once we got into the courtroom, Mr. Mollica appeared very relaxed, calm, cool; his tone had changed. . . . Again, he was very calm, collected and polite to both of us that day." (R. at 81.) Thus, there is evidence that Mollica's mental state did not prevent him from understanding the nature of the proceedings and the consequences of his asserting his guilt. Mollica did not provide evidence that adequately explained the reasons for his contradictory statements regarding his innocence.

The District Court found Mollica not to be a credible witness, a finding this court will not second-guess. *See United States v. Washington*, 341 F.2d 277 (3d Cir. 1965) (citing *United States v. Nigro*, 262 F.2d 783, 787 (3d Cir. 1959)) ("The good faith, credibility and weight of a defendant's assertions and those made on his behalf in support of a motion [to withdraw a guilty plea prior to sentencing] are preeminently issues for the hearing court to decide."). Given Mollica's inconsistent testimony and the absence of evidence in the record—other than his own statements—supporting his claims of innocence, the District Court did not abuse its discretion in finding Mollica's claims regarding his innocence unpersuasive.

9

**B.**

With respect to the second factor—the strength of the defendant's reasons for withdrawing the plea—the District Court correctly concluded that Mollica's mistaken belief regarding his likely sentence was not a sufficiently strong reason to permit withdrawal of the plea, given the thorough plea colloquy in which he had engaged. In particular, the District Court reasoned that

> he was told that he could get as high as 40 years['] imprisonment, that any estimate given to him by counsel was not binding upon the Court at all, that he admitted to the accuracy and reliability of the statement of the Government, as well as the allegations in the plea agreement, all of which were very extensive and very inclusive.

(R. at 85.) The District Court's conclusion with respect to the strength of Mollica's reasons for moving to withdraw his guilty plea is supported by the record and does not evidence an abuse of discretion.

First, the plea agreement signed by Mollica and counsel for the government includes admonitions regarding potential sentence length and the discretion of the government and the court with respect to the sentence length. Regarding the government's sentencing recommendation, the agreement provides:

> At the time of sentencing, the United States may make a recommendation that it considers appropriate based upon the nature and circumstances of the case and the defendant's participation in the offense, and specifically reserves the right to recommend a sentence up to and including the maximum sentence of imprisonment and fine allowable, together with the cost of prosecution.

10

(R. at 154.)  With respect to the maximum sentence Mollica faced, the agreement

provides:

> The defendant understands that the Court is not a party to and is not bound
> by this agreement nor any recommendation made by the parties.  Thus, the
> Court is free to impose upon the defendant any sentence up to and including
> the maximum sentence of imprisonment of forty years, a fine of $2 million,
> a maximum term of supervised release of up to life, which shall be served at
> the conclusion of and in addition to any term of imprisonment, the costs of
> prosecution, denial of certain federal benefits and assessments totaling
> $100.

(R. at 159.)  Mollica told the District Court that he read and understood the plea

agreement, that he discussed it with counsel, and that everything in the agreement was

acceptable to him.  (R. at 134.)  He testified that he understood any sentence

recommendation made by the government would not be binding on the District Court and

that the District Court's sentence might differ from any estimate given to him by plea

counsel.  (R. at 136, 137.)  He also testified that he understood that "if the sentence is

more severe that [he] expected, [he would] still be bound by [the] guilty plea and [would]

have no right to withdraw it."  (R. at 138.)  He testified similarly with respect to the

Statement of the Defendant, which also explained the maximum sentence and the court's

discretion in imposing a sentence.  (R. at 132-33, 145-47.)

Second, the plea agreement makes clear that no promises other than those

contained in the writing are part of the plea agreement.  (*See* R. at 163-64.)  Mollica

testified that no one had "made any promise, representation, agreement or understanding

with [him], other than what's contained in the written plea agreement."  (R. at 135.)  He

11

further testified that he understood that he could "not at a later time contend that any promise, representation, agreement or understanding was made to [him] by any person, either in or outside of Court, other than what's contained in the written plea agreement." (R. at 135-36.) Mollica did not mention his impression that he would be sentenced to sixty months.

Third, Mollica's guilty plea was entered knowingly and voluntarily. Mollica argues that his plea was not knowing as a result of his not having been fairly apprised of the consequences of his plea as it related to sentencing. When challenging a guilty plea, "a defendant has the burden of persuasion to establish that a plea was neither intelligent nor voluntary." *United States v. Stewart*, 977 F.2d 81, 85 (3d Cir. 1992). For a plea to be valid, the defendant must have been advised of, and must have understood, the "direct consequences" of his plea. *Parry v. Rosemeyer*, 64 F.3d 110, 114 (3d Cir. 1995), *superseded on other grounds by statute as stated in Dickerson v. Vaughn*, 90 F.3d 87 (3d Cir. 1996). The Third Circuit has held that "[t]he only consequences considered direct are the maximum prison term and fine for the offense charged." *Id.* (quoting *United States v. Salmon*, 944 F.2d 1106, 1130 (3d Cir. 1991)). Mollica was repeatedly advised of the maximum sentence and fine that could be imposed consistent with the plea agreement, and Mollica told the trial court that he understood the consequences of his plea.

Mollica also argues that his plea was not voluntary because plea counsel's error regarding the likely sentence length and the prosecutor's concurrence with that estimate induced him to plead guilty. As noted above, Mollica repeatedly was advised of—and repeatedly stated that he understood—the maximum sentence to which he was exposed. Moreover, Mollica himself had the relevant information indicating that the sixty-month estimate based on his criminal history as set forth on the bail sheet was likely too low. Plea counsel explained to the District Court that, based on Mollica's bail sheet, he was initially concerned that Mollica might be classified as a career offender. But Mollica assured plea counsel that he would not be classified as a career offender.[2] Additionally, when Mollica met with plea counsel and the prosecutor on the afternoon of his plea, Mollica testified that he knew that the bail history the lawyers were reviewing was a preliminary—and incomplete—record.[3] Mollica also knew that the plea was not binding

---

[2]Mollica was adamant that one robbery listed on the bail sheet had been reversed on appeal. Plea counsel located a New York decision reversing the conviction and ordering a new trial. Mollica assured plea counsel that he was never retried. However, unbeknownst to plea counsel, Mollica had later pled guilty to that offense. (R. at 79.)

Another robbery was reported on the bail sheet with no disposition. When plea counsel received the presentence report, he discovered that Mollica had also been convicted of and sentenced for that robbery on the same day as another robbery. (*Id.*)

[3]Mollica testified that "they pulled out a rap sheet of my record that they had, and I had a .11 score on it—11 score. And they went on the guidelines and said, It's 110 months, and I will put in a full assistance departure, and I will have to go under the 60 months because then [plea counsel] could put in his 2-level departure for your medical 'cause if you don't go under the 60 months, then I can't put the medical departure in . . . ." (R. at 67.) Later in his testimony before the District Court, Mollica explained that he said to plea counsel and government counsel, "My record is a little more than [what is reflected on the bail history], you know what I mean. It's going to be a little more."

as to the sentence under Federal Rule of Criminal Procedure 11(c)(1)(C). Referring to the sentence to be imposed by the court, plea counsel "advised him that what he had in front of him was not a binding plea; it was not binding on the [c]ourt. He understood that and accepted it."[4] (R. at 79.)

Furthermore, Mollica's plea appears to comport with all constitutional requirements. *See Boykin v. Alabama*, 395 U.S. 238, 242-44 & 244 n.7 (1969). "A transcript showing full compliance with the customary inquiries and admonitions furnishes strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences." *Stewart*, 977 F.2d at 84.

Fourth, the District Court found Mollica's testimony not credible. The District Court reported: "I would say that the [d]efendant's testimony was somewhat inconsistent, emotional, erratic and difficult to follow, and I will reject it as to the allegations that he has made against the other witnesses in this particular case. So I accept the testimony of the Government witnesses." (R. at 86.) A probation officer and a U.S. Marshal testified for the government that, while they were in the holding cell before the plea colloquy with

---

(R. at 73.) Mollica testified that plea counsel replied, "Well, no, this is what they're going on." (*Id.*)

[4]Plea counsel advised Mollica that he could request a guilty plea agreement with the government that would include a binding agreement as to sentence, but that Mollica would not then be able to request a further reduction based on his medical condition. Mollica decided he did not want such a plea agreement. (R. at 79.)

14

Mollica, plea counsel, and counsel for the government, they observed neither plea counsel nor counsel for the government "badger or threaten Mr. Mollica in any way" or "shout or yell at Mr. Mollica about anything regarding this case." (R. at 76, 77.) Plea counsel testified for the government that he never promised Mollica that Mollica would serve any particular sentence and that he believed Mollica understood the sixty-month estimate to be just that—an estimate. (R. at 79-80.) Furthermore, plea counsel testified that he discussed the plea agreement with Mollica and that he understood Mollica to be clear that the District Court could sentence him to up to forty years' imprisonment. (R. at 80.)

In sum, Mollica has not sustained his burden of showing that his guilty plea was not knowing and voluntary because of plea counsel's miscalculation of the estimated sentence. *See Jones*, 336 F.3d at 254 (concluding that the defendant's assertion that his plea counsel's promise of a sentence of "no less than 57 months and no more than 71 months" did not cause a plea resulting in a longer sentence to be unknowing and involuntary where the court held a thorough plea colloquy and "the record fails to clearly demonstrate either that the misrepresentations occurred or that [the defendant] was prejudiced"). The District Court engaged in a thorough plea colloquy with Mollica. It found Mollica's testimony regarding his mental state at the plea colloquy not credible. It then found that Mollica's assertion of innocence was not supported by any facts and that his proffered reasons for withdrawing his plea were not sufficiently strong to support

withdrawal of the plea.  In making these findings, the District Court did not abuse its discretion.[5]

## IV.

The District Court did not abuse its discretion in denying Mollica's motion to withdraw his guilty plea.  Mollica has shown no sufficient grounds for permitting withdrawal of the plea.  We will, therefore, affirm the judgment of the District Court.

---

[5]Because Mollica did not show sufficient grounds for withdrawal of his plea based on either his innocence or the strength of his reasons for withdrawing the plea, the District Court did not abuse its discretion by not addressing the third factor, relating to prejudice to the government.  *See Martinez*, 785 F.2d at 116.